## MARTINEZ ET AL. *v.* CALIFORNIA ET AL.

No. 78–1268.   Argued November 5, 1979—Decided January 15, 1980

STEVENS, J., delivered the opinion for a unanimous Court.

*Donald McGrath II* argued the cause for appellants. With him on the brief was *Walter P. Christensen.*

*Jeffrey T. Miller,* Deputy Attorney General of California, argued the cause for appellees. With him on the brief were *George Deukmejian,* Attorney General, and *Robert L. Bergman,* Assistant Attorney General.*

*Briefs of *amici curiae* urging reversal were filed by *Frank Carrington* for Americans for Effective Law Enforcement, Inc.; and by *Ronald A. Zumbrun* and *John H. Findley* for the Pacific Legal Foundation.

Briefs of *amici curiae* urging affirmance were filed by *Solicitor General McCree, Acting Assistant Attorney General Daniel, Robert E. Kopp,* and *Barbara L. Herwig* for the United States; by *John J. Degnan,* Attorney General, and *Erminie L. Conley,* Assistant Attorney General, for the State of New Jersey; and by *William J. Brown,* Attorney General, and *Simon B. Karas, George Stricker, Jr.,* and *Dennis L. Sipe,* Assistant Attorneys General, for the State of Ohio.

MR. JUSTICE STEVENS delivered the opinion of the Court.

The two federal questions that appellants ask us to decide are (1) whether the Fourteenth Amendment invalidates a California statute granting absolute immunity to public employees who make parole-release determinations, and (2) whether such officials are absolutely immune from liability in an action brought under the federal Civil Rights Act of 1871, 42 U. S. C. § 1983.[1] We agree with the California Court of Appeal that the state statute is valid when applied to claims arising under state law, and we conclude that appellants have not alleged a claim for relief under federal law.

The case arises out of the murder of a 15-year-old girl by a parolee. Her survivors brought this action in a California court claiming that the state officials responsible for the parole-release decision are liable in damages for the harm caused by the parolee.

The complaint alleged that the parolee, one Thomas, was convicted of attempted rape in December 1969. He was first committed to a state mental hospital as a "Mentally Disordered Sex Offender not amenable to treatment" and thereafter sentenced to a term of imprisonment of 1 to 20 years, with a recommendation that he not be paroled. Nevertheless, five years later, appellees decided to parole Thomas to the care of his mother. They were fully informed about his history, his propensities, and the likelihood that he would commit another violent crime. Moreover, in making their release determination they failed to observe certain "requisite formalities." Five months after his release Thomas tortured

---

[1] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

and killed appellants' decedent. We assume, as the complaint alleges, that appellees knew, or should have known, that the release of Thomas created a clear and present danger that such an incident would occur. Their action is characterized not only as negligent, but also as reckless, willful, wanton and malicious.[2] Appellants prayed for actual and punitive damages of $2 million.

The trial judge sustained a demurrer to the complaint and his order was upheld on appeal. 85 Cal. App. 3d 430, 149 Cal. Rptr. 519 (1978). After the California Supreme Court denied appellants' petition for a hearing, we noted probable jurisdiction. 441 U. S. 960.

I

Section 845.8 (a) of the Cal. Gov't Code Ann. (West Supp. 1979) provides:

"Neither a public entity nor a public employee is liable for:

(a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release."

The California courts held that this statute provided appellees with a complete defense to appellants' state-law claims.[3] They considered and rejected the contention that the immu-

---

[2] Although the complaint refers to the failure to supervise Thomas after his release, a failure to warn females in the area of potential danger, and a failure to revoke the original parole decision, the litigation has focused entirely on the original decision. The individual appellees are not alleged to have responsibility for postrelease supervision of Thomas.

[3] The dismissal of appellants' cause of action charging negligent failure to warn females in the area of danger was predicated on appellants' concession that there was no "continuing relationship between the state and the victim," 85 Cal. App. 3d 430, 435, 149 Cal. Rptr. 519, 523 (1978), a requirement of state law.

nity statute as so construed violates the Due Process Clause of the Fourteenth Amendment to the Federal Constitution.[4]

Like the California courts, we cannot accept the contention that this statute deprived Thomas' victim of her life without due process of law because it condoned a parole decision that led indirectly to her death. The statute neither authorized nor immunized the deliberate killing of any human being. It is not the equivalent of a death penalty statute which expressly authorizes state agents to take a person's life after prescribed procedures have been observed. This statute merely provides a defense to potential state tort-law liability. At most, the availability of such a defense may have encouraged members of the parole board to take somewhat greater risks of recidivism in exercising their authority to release prisoners than they otherwise might. But the basic risk that repeat offenses may occur is always present in any parole system. A legislative decision that has an incremental impact on the probability that death will result in any given situation—such as setting the speed limit at 55-miles-per-hour instead of 45—cannot be characterized as state action depriving a person of life just because it may set in motion a chain of events that ultimately leads to the random death of an innocent bystander.

Nor can the statute be characterized as an invalid deprivation of property. Arguably, the cause of action for wrongful death that the State has created is a species of "property"

---

[4] ". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U. S. Const., Amdt. 14, § 1.

Although the question presented in the jurisdictional statement posits an Equal Protection Clause challenge to the statute, that point was not actually briefed in this Court. It was also neither raised in nor treated by the courts below. We therefore make no further reference to that challenge.

protected by the Due Process Clause. On that hypothesis, the immunity statute could be viewed as depriving the plaintiffs of that property interest insofar as they seek to assert a claim against parole officials.[5] But even if one characterizes the immunity defense as a statutory deprivation, it would remain true that the State's interest in fashioning its own rules of tort law is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational.

We have no difficulty in accepting California's conclusion that there "is a rational relationship between the state's purposes and the statute." [6] In fashioning state policy in a "prac-

---

[5] It is arguable, however, that the immunity defense, like an element of the tort claim itself, is merely one aspect of the State's definition of that property interest. Recently, in considering a lawyer's claim of immunity in a state malpractice action, we noted that

"when state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law." *Ferri v. Ackerman, ante,* at 198.

[6] "Martinez says the statute, Government Code section 845.8, subdivision (a), is unconstitutional because it permits the deprivation of life, a fundamental right, without due process. He suggests the statute, if it confers absolute immunity, encouraged the actions resulting in Mary Ellen's death and, thus, requires a compelling state interest. However, the Legislature has broad powers to control governmental tort liability limited only by the rule it not act arbitrarily (*Reed v. City & County of San Francisco,* 237 Cal. App. 2d 23, 24 . . .). The California Tort Claims Act as a whole (Gov. Code § 810 et seq.) has been found constitutional (*Datil v. City of Los Angeles,* 263 Cal. App. 2d 655, 660–661 . . .). The stated purpose of section 845.8, subdivision (a), is to allow correctional personnel to make determinations of release or parole unfettered by any fear of tort liability (Law Revision Com. com.). To impose tort liability would have a chilling effect on the decision-making process, impede implementation of trial release programs and prolong incarceration unjustifiably for many prisoners. There is a rational relationship between the state's purposes and the statute." 85 Cal. App. 3d, at 437, 149 Cal. Rptr., at 524.

The opinion of the California Court of Appeal does not expressly mention the Federal Constitution. But it is clear from appellants' response to

tical and troublesome area" like this, see *McGinnis* v. *Royster*, 410 U. S. 263, 270, the California Legislature could reasonably conclude that judicial review of a parole officer's decisions "would inevitably inhibit the exercise of discretion," *United States ex rel. Miller* v. *Twomey*, 479 F. 2d 701, 721 (CA7 1973), cert. denied, 414 U. S. 1146. That inhibiting effect could impair the State's ability to implement a parole program designed to promote rehabilitation of inmates as well as security within prison walls by holding out a promise of potential rewards. Whether one agrees or disagrees with California's decision to provide absolute immunity for parole officials in a case of this kind, one cannot deny that it rationally furthers a policy that reasonable lawmakers may favor. As federal judges, we have no authority to pass judgment on the wisdom of the underlying policy determination. We therefore find no merit in the contention that the State's immunity statute is unconstitutional when applied to defeat a tort claim arising under state law.

## II

We turn then to appellants' § 1983 claim that appellees, by their action in releasing Thomas, subjected appellants' decedent to a deprivation of her life without due process of law.[7]

---

the demurrer that they were relying on "a federally protected right to life under the Constitution of the United States." Record 59.

[7] We note that the California courts accepted jurisdiction of this federal claim. That exercise of jurisdiction appears to be consistent with the general rule that where

" 'an act of Congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a State court.' " *Testa* v. *Katt*, 330 U. S. 386, 391, quoting *Claflin* v. *Houseman*, 93 U. S. 130, 137.

See also *Aldinger* v. *Howard*, 427 U. S. 1, 36, n. 17 (BRENNAN, J., dissenting); *Grubb* v. *Public Utilities Comm'n*, 281 U. S. 470, 476. We have never considered, however, the question whether a State *must* entertain a claim under § 1983. We note that where the same type of claim, if arising under state law, would be enforced in the state courts, the state courts

It is clear that the California immunity statute does not control this claim even though the federal cause of action is being asserted in the state courts.[8]   We also conclude that it is not necessary for us to decide any question concerning the immunity of state parole officials as a matter of federal law because, as we recently held in *Baker* v. *McCollan,* 443 U. S. 137, "[t]he first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws' " of the United States.[9]   The answer to that inquiry disposes of this case.

Appellants contend that the decedent's right to life is protected by the Fourteenth Amendment to the Constitution. But the Fourteenth Amendment protected her only from deprivation by the *"State . . .* of life . . . without due process of law."   Although the decision to release Thomas from prison

---

are generally not free to refuse enforcement of the federal claim.   *Testa* v. *Katt, supra,* at 394.   But see *Chamberlain* v. *Brown,* 223 Tenn. 25, 442 S. W. 2d 248 (1969).

· [8] "Conduct by persons acting under color of state law which is wrongful under 42 U. S. C. § 1983 or § 1985 (3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced.   See *McLaughlin* v. *Tilendis,* 398 F. 2d 287, 290 (7th Cir. 1968).   The immunity claim raises a question of federal law."   *Hampton* v. *Chicago,* 484 F. 2d 602, 607 (CA7 1973), cert. denied, 415 U. S. 917.

[9] *Baker* v. *McCollan,* 443 U. S., at 140.   Although there was a dissent in that case, the issue that divided the Court was, assuming the plaintiff had been deprived of constitutionally protected liberty, what process was due. There was no disagreement with the majority's methodology of isolating the particular constitutional infringement complained of.   Since we decide here that the State did not "deprive" appellants' decedent of a constitutionally protected right, we need not reach the question whether a lack of "due process" was adequately alleged by the reference to a failure to observe "requisite formalities."   It must be remembered that even if a state decision does deprive an individual of life or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process.

was action by the State, the action of Thomas five months later cannot be fairly characterized as state action. Regardless of whether, as a matter of state tort law, the parole board could be said either to have had a "duty" to avoid harm to his victim or to have proximately caused her death, see *Grimm* v. *Arizona Bd. of Pardons and Paroles,* 115 Ariz. 260, 564 P. 2d 1227 (1977); *Palsgraf* v. *Long Island R. Co.,* 248 N. Y. 339, 162 N. E. 99 (1928), we hold that, taking these particular allegations as true, appellees did not "deprive" appellants' decedent of life within the meaning of the Fourteenth Amendment.

Her life was taken by the parolee five months after his release.[10] He was in no sense an agent of the parole board. Cf. *Scheuer* v. *Rhodes,* 416 U. S. 232. Further, the parole board was not aware that appellants' decedent, as distinguished from the public at large, faced any special danger. We need not and do not decide that a parole officer could never be deemed to "deprive" someone of life by action taken in connection with the release of a prisoner on parole.[11] But we do hold that at least under the particular circumstances of this parole decision, appellants' decedent's death is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law. Although a § 1983 claim has been described as "a species of tort liability," *Imbler* v. *Pachtman,* 424 U. S. 409, 417, it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute.

The judgment is affirmed.

*So ordered.*

---

[10] Compare the facts in *Screws* v. *United States,* 325 U. S. 91, where local law enforcement officials themselves beat a citizen to death.

[11] We reserve the question of what immunity, if any, a state parole officer has in a § 1983 action where a constitutional violation is made out by the allegations.