**Marie ELLSWORTH and Paul Ellsworth, Plaintiffs,**

v.

**CITY OF RACINE, a municipal corporation, Defendant.**

**No. 84–C–751.**

United States District Court,
E.D. Wisconsin.

Sept. 12, 1984.

Linda S. Vanden Heuvel, Milwaukee, Wis., for plaintiffs.

Joseph E. Boyle, City Atty., Racine, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

This action was brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.

The plaintiffs, Marie Ellsworth and her husband, Paul Ellsworth, allege that the defendant City of Racine (City) denied Mrs. Ellsworth her 14th Amendment right to due process of law by negligently failing to provide Mrs. Ellsworth with 24-hour protection on July 21, 1980, with the result that Mrs. Ellsworth was beaten unconscious by an unknown assailant. Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, the City has moved to dismiss the complaint for failure to state a claim. The motion will be granted.

For the purpose of testing a complaint under Rule 12(b)(6), all allegations are assumed to be true, and any inferences are drawn in the plaintiff's favor. *Powe v. City of Chicago*, 664 F.2d 639 (7th Cir. 1981). The complaint alleges that in 1980 Paul Ellsworth was an undercover narcotics officer employed by the Racine Police Department. Because of Mr. Ellsworth's activities as a participant in a narcotics investigation, Mrs. Ellsworth received threatening cards, letters and telephone calls. She was also photographed and followed by unknown individuals who made threatening gestures. On one occasion, Mrs. Ellsworth was forced off the road while driving. On another occasion, Mrs. Ellsworth was shot at while working in his driveway.

In response to the acts of intimidation directed at the Ellsworths, the Racine Police Department assigned an officer to protect Mrs. Ellsworth for eight hours each day. On July 21, 1980, Mrs. Ellsworth and her assigned guard observed an automobile driving slowly past the Ellsworth home. At 6:30 p.m., Mrs. Ellsworth told the police guard that her services were no longer needed, and the officer left. Shortly thereafter, Mrs. Ellsworth went into her backyard in search of her dog. While outside, she was attacked by a masked man who told her to "tell the pig to keep his mouth shut." Mrs. Ellsworth was beaten unconscious.

The 14th Amendment protects an individual's right to be free from "unjusti-

fied intrusions on personal security." *Ingraham v. Wright,* 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977). The initial inquiry in a § 1983 action is "whether the conduct complained of was committed by a person acting under state law." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). A public official is liable under § 1983 "only if he *causes* the plaintiff to be subjected to deprivation of his constitutional rights." *Baker v. McCollan,* 443 U.S. 137, 142, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979), quoting *McCollan v. Tate,* 575 F.2d 509, 512 (5th Cir.1978) (emphasis in original).

In *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), a violent criminal, one Thomas, having committed murder, had been dispatched to a state mental hospital pursuant to a 1 to 20 year sentence with a recommendation that he not be paroled. Five years later, the state parole board released Thomas, although "fully informed about his history, his propensities, and the likelihood that he would commit another violent crime." *Martinez,* 444 U.S. at 279, 100 S.Ct. at 556. Five months later, Thomas tortured and killed a 15-year old girl. The girl's survivors brought an action under § 1983. The Supreme Court held that the parole board could not be charged with having deprived the decedent of her 14th Amendment right to life because Thomas' crime was "too remote" from the state action:

> Regardless of whether, as a matter of state tort law, the parole board could be said either to have had a "duty" to avoid harm to [the] victim or to have proximately caused her death, [cites omitted], we hold that, taking these particular allegations as true, appellees did not "deprive" appellants' decedent of life within the meaning of the Fourteenth Amendment.
>
> ....
>
> [U]nder the particular circumstances of this parole decision, appellants' decedent's death was too remote a consequence of the parole officers' action to

hold them responsible under the federal civil rights law.

*Martinez,* 444 U.S. at 285, 100 S.Ct. at 559.

In *Jackson v. City of Joliet,* 715 F.2d 1200 (7th Cir.1983), the Court of Appeals for the Seventh Circuit upheld the district court's dismissal of a § 1983 complaint which alleged that the defendants deprived the plaintiffs' decedents of their 14th Amendment right to life when police negligently failed to pull them from a burning car after a highway accident. As in *Martinez,* the official action was deemed too remote from the deprivation to justify § 1983 liability:

> Section 1983 has been read to take the command of the due process clause one step further by imposing liability on officers acting under color of, though contrary to, state law. But the concern is with the use of state-created power to kill rather than with the state's failing to prevent death. Ross's car ran off the road and burst into flames for reasons unrelated to the actions of any state officer....
>
> ... If the defendants deprived the plaintiffs' decedents of anything it was of some right to competent rescue services. But, as we have been at pains to stress, there is no such right in the Fourteenth Amendment.

*Jackson,* 715 F.2d at 1204 and 1205.

Likewise in *Bowers v. DeVito,* 686 F.2d 616 (7th Cir.1982), the Court of Appeals held that the estate of a murdered woman could not maintain a § 1983 claim alleging that state mental health officials deprived the woman of her 14th Amendment right to life when they released her murderer, a psychotic individual who had previously been found not guilty of another murder by reason of insanity:

> There is a constitutional right not to be murdered by a state officer, for the state violates the Fourteenth Amendment when its officer, acting under color of state law, deprives a person of life without due process of law. [cite omitted]. But there is no constitutional right to be protected by the state against being mur-

dered by criminals or madmen.... The Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order. Discrimination in providing protection against private violence could of course violate the equal protection clause of the Fourteenth Amendment. But that is not alleged here. All that is alleged is a failure to protect Miss Bowers and others like her from a dangerous madman, and as the State of Illinois has no federal constitutional duty to provide such protection its failure to do so is not actionable under section 1983.

*Bowers*, 686 F.2d at 618.

■ These cases indicate that state officials are not liable under § 1983 for constitutional deprivations caused by third parties outside their control. A state may, of course, place upon state officials duties to take positive action to prevent infringement of citizens' rights by third parties and may create tort remedies for violations of such duties. Creation of state tort liability, however, does not subject state officials to § 1983 liability. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979).

■ In the *Martinez* and *Bowers* cases discussed above, § 1983 claims were rejected despite allegations that state officials' affirmative negligent acts (release of criminals) caused deprivations of constitutional rights. The argument for imposing liability is even weaker in the case at bar where state officials never had control over Mrs. Ellsworth's assailant. Mrs. Ellsworth was deprived of her liberty by an unknown assailant, not by an official acting under color of state law. The state is alleged to be responsible only in that it failed to take special measures to prevent the attack. While the City's failure to act may constitute a violation of a duty of care under

state law (I hazard no opinion on that issue), it did not "deprive" the plaintiff of her liberty in any constitutional sense.

The plaintiffs cite various decisions supporting § 1983 liability based on negligence by state officials. Those cases do not undermine the result reached here. While *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), establishes that a § 1983 violation requires no particular state of mind, the plaintiff's allegations must nonetheless demonstrate that the defendant caused the deprivation. Moreover, an allegation of proximate cause sufficient under a state duty of care may be inadequate for purposes of § 1983.

That the Ellsworths were endangered as a result of Mr. Ellsworth's performance of his duties under the direction of the Racine Police Department does not justify attribution of the unknown assailant's liberty-depriving attack to the defendant. The Court of Appeals for the Seventh Circuit has found state officials liable under § 1983 for failure to protect only where the plaintiffs had been involuntarily deprived by the state of any means to protect their own constitutional interests. *Wood v. Worachek*, 618 F.2d 1225 (7th Cir.1980) (deliberate indifference to medical needs of prisoners); *White v. Rochford*, 592 F.2d 381 (7th Cir.1979) (police abandoned children in car on expressway after arresting driver); *Spence v. Staras*, 507 F.2d 554 (7th Cir. 1974) (assault by other inmates).

Mr. Ellsworth, presumably with Mrs. Ellsworth's acquiescence, freely chose to undertake the potentially dangerous duties of a police officer. That danger eventually came the Ellsworths' way is far more the result of Mr. Ellsworth's choice than of the City's decision to conduct any particular investigation. The state may choose to provide special protections to employees in dangerous occupations; the 14th Amendment does not. The complaint must be dismissed because it does not adequately allege that the defendant deprived the plaintiffs of any constitutional right.

There is an alternative ground for dismissing the complaint. Under *Monell v.*

*New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality may not be held liable under § 1983 based on the theory of respondeat superior. The allegedly unconstitutional acts must represent the municipality's official policy or custom. Even assuming that state officials could be held liable under § 1983 for a deprivation of liberty caused by an unknown assailant, the municipality cannot be held responsible under § 1983 because the complaint fails to allege facts indicating that the City followed a policy which exposed citizens or police officers' families to attack.

Since the pre-July 21, 1980, procedures did not result in a deprivation of any right protected by the 14th Amendment, they must be assumed to have been constitutionally sufficient. Therefore, the complaint alleges only a single incident of unconstitutional conduct. In *Powe v. City of Chicago,* 664 F.2d 639, 651 (7th Cir.1981), the Court of Appeals for the Seventh Circuit held that the "allegation of a single incident of unconstitutional conduct by a municipal employee usually does not establish a sufficient basis for suing the municipality." If the plaintiffs had alleged a series or at least a few attacks on similarly situated persons, a City policy or custom of providing insufficient protection might be inferred. In the absence of such allegations, however, any constitutional wrong that occurred may not be attributed to the City.

Therefore, IT IS ORDERED that the defendant's motion to dismiss be and hereby is granted.

IT IS ALSO ORDERED that this action be and hereby is dismissed, with prejudice.