**Gregory AMOS, Plaintiff,**

**v.**

**Michael LANE, individually and as Director of the Illinois Department of Corrections, certain unknown members of the Illinois Prisoner Review Board, individually, The Illinois Prisoner Review Board, and the State of Illinois, Defendants.**

**No. 85 C 1450.**

United States District Court, N.D. Illinois, E.D.

Feb. 26, 1985.

James A. McCarron, Peter F. Bender, Kevin P. Brown, Law Offices of James A. McCarron, Chicago, Ill., for plaintiff.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Gregory Amos ("Amos") has filed this action under 42 U.S.C. §§ 1983, 1985 and 1988 [1] and under pendent jurisdiction of state-law claims against several defendants: Illinois Department of Corrections Director Michael Lane, the unnamed members of the Illinois Prison Review Board and the State of Illinois itself. For the reasons stated in this memorandum opinion and order, this Court sua sponte enters judgment on the pleadings for defendants.

According to Amos' Complaint, on November 22, 1983 he was assaulted (tied up, then cut and stabbed) and his fiancee was tied up and then sexually assaulted by Cleotha Watts ("Watts"). Watts had been released on parole two months earlier, cutting short his service of a long prison term for murder, rape and armed robbery. Amos complains that Watts' release was not proper under Illinois statutes or Department of Corrections' regulations (Complaint ¶¶ 14, 22) and that Watts' background and recidivist record should have alerted defendants to the "clear and present danger" Watts presented "to the citizens of Illinois and specifically to those citizens living in Cook County" (Complaint ¶¶ 15H, 23).

As tragic as the events recited in the Complaint are, they may not be placed at defendants' doorstep. Amos' lawyer has simply not done his homework—or perhaps any research at all—before filing suit.

First, it is fundamental jurisprudence that the *State* is not subject to suit under the post-Civil War civil rights statutes invoked by Amos. That proposition is firmly established by a number of square holdings by the Supreme Court, most recently *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 906–08, 79 L.Ed.2d 67 (1984) (and see cases cited there).

Second, none of the branches of Section 1985 [2] provides a safe harbor for Amos' claims:

---

1. Each of those statutory provisions will be cited simply "Section—".

2. Consistently with the entire tenor of Amos' Complaint, it simply cites to Section 1985, with-

1. Section 1985(1) by its terms is limited to conspiracies to impede the performance of duty by officers of the United States.

2. Section 1985(2), though it does not require the class-based animus of Section 1985(3) (next discussed), is equally inapplicable on its face to the facts alleged by Amos. See *Kush v. Rutledge,* 460 U.S. 719, 724–27, 103 S.Ct. 1483, 1486–88, 75 L.Ed.2d 413 (1983).

3. At least since *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) there has been no doubt Section 1985(3) extends *only* to class-based invidious discrimination. Indeed less than two years ago the Supreme Court reaffirmed that proposition in unmistakable terms. *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). No such discrimination is even hinted at here.

■ Third, Section 1988 is not in the case at all for jurisdictional purposes. Anyone who troubles to read it must recognize it does not create any substantive rights to a cause of action, but rather deals with the procedure to be followed in civil rights actions over which jurisdiction is conferred by other statutory provisions.

■ That leaves only Section 1983, whose familiar provisions (in the respect relevant here) grant relief for deprivations under color of state law of life, liberty or property without due process of law. Just five years ago the Supreme Court, in one of its relatively infrequent unanimous decisions, flatly rejected a Section 1983 cause of action in *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), a case with such similar facts that the opinion might well have been written for this case (*id.* at 279–80, 100 S.Ct. at 556–57):

> out any effort to distinguish among its subsections (even though they draw on quite different principles). That has imposed still another burden on this Court.

The complaint alleged that the parolee, one Thomas, was convicted of attempted rape in December 1969. He was first committed to a state mental hospital as a "Mentally Disordered Sex Offender not amenable to treatment" and thereafter sentenced to a term of imprisonment of 1 to 20 years, with a recommendation that he not be paroled. Nevertheless, five years later, appellees decided to parole Thomas to the care of his mother. They were fully informed about his history, his propensities, and the likelihood that he would commit another violent crime. Moreover, in making their release determination they failed to observe certain "requisite formalities." Five months after his release Thomas tortured and killed appellants' decedent. We assume, as the complaint alleges, that appellees knew, or should have known, that the release of Thomas created a clear and present danger that such an incident would occur. Their action is characterized not only as negligent, but also as reckless, willful, wanton and malicious. Appellants prayed for actual and punitive damages of $2 million.

If anything the *Martinez* factual situation was even more horrifying than that alleged by Amos.[3] Nonetheless, as Justice Stevens said for the Court (444 U.S. at 284–85, 100 S.Ct. at 558–59, citations omitted):

> We also conclude that it is not necessary for us to decide any question concerning the immunity of state parole officials as a matter of federal law because, as we recently held in *Baker v. McCollan,* 443 U.S. 137 [99 S.Ct. 2689, 61 L.Ed.2d 433], "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'" of the United States.

---

3. It is true that Watts committed his violent acts on Amos and his fiancee two months after his release, while the parolee in *Martinez* committed his killing five months after release. That however is a distinction without a difference under the *Martinez* analysis.

The answer to that inquiry disposes of this case.

Appellants contend that the decedent's right to life is protected by the Fourteenth Amendment to the Constitution. But the Fourteenth Amendment protected her only from deprivation by the "state ... of life ... without due process of law." Although the decision to release Thomas from prison was action by the State, the action of Thomas five months later cannot be fairly characterized as state action. Regardless of whether, as a matter of state tort law, the parole board could be said either to have had a "duty" to avoid harm to his victim or to have proximately caused her death, ... we hold that, taking these particular allegations as true, appellees did not "deprive" appellants' decedent of life within the meaning of the Fourteenth Amendment.

Her life was taken by the parolee five months after his release. He was in no sense an agent of the parole board. ... Further, the parole board was not aware that appellants' decedent, as distinguished from the public at large, faced any special danger. We need not and do not decide that a parole officer could never be deemed to "deprive" someone of life by action taken in connection with the release of a prisoner on parole. But we do hold that at least under the particular circumstances of this parole decision, appellants' decedent's death is too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law. Although a § 1983 claim has been described as "a species of tort liability," *Imbler v. Pachtman,* 424 US. 409, 417 [96 S.Ct. 984, 988, 47 L.Ed.2d 128] it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute.

Accordingly, Amos not only has not stated but cannot state a cause of action against defendants under the Civil Rights Act. Judgment is entered on the pleadings for defendants, and this action is dismissed. Although a copy of this opinion is being mailed to the Illinois Attorney General's office, Amos' counsel is directed to send copies of this opinion forthwith to the same addresses he has used for service of process on defendants.[4]

---

4. This added directive is aimed at avoiding needless trouble and expense to defendants, with the resulting potential of a Fed.R.Civ.P. 11 sanction against Amos' counsel for having filed such an obviously groundless lawsuit (certainly the scope of federal jurisdiction in this area is not a subject as to which Amos himself is charged with knowledge).