**DIVISION OF FAMILY SERVICES, Petitioner,**

v.

**CHERYL B., Respondent.**

**No. 394, 1997.**

Family Court of Delaware, Kent County.

Submitted: June 4, 1998.
Decided: Aug. 6, 1998.

Ann Marie Johnson, Deputy Attorney General, for Petitioner.

Daniel G. Atkins, Media, PA, for Respondent.

NICHOLAS, Judge.

On remand from the Supreme Court of the State of Delaware is a decision in which I dismissed three counterclaims brought by Cheryl B., (hereinafter "Respondent"), the natural mother of the two minor children who were the subjects of a Petition for Custody brought by the Division of Family Services (hereinafter "DFS"). The procedural and substantive facts of this case were discussed in detail in my August 14, 1997, decision; therefore, I will not repeat them here.[1]

The issue before this Court is whether the Family Court has jurisdiction over the Respondent's claims under 42 U.S.C. § 1983, (hereinafter "§ 1983"). I find, for the reasons discussed below, that the Family Court has jurisdiction to hear the Respondent's § 1983 claims. However, the Respondent's § 1983 claims fail for three reasons: (1) there is no enforceable right under the services provisions of the federal Adoption Assistance and Child Welfare Act of 1980 (hereinafter "AACWA"); (2) although there is an enforceable right under the case plan provisions of the AACWA, the facts of this case do not support the Respondent's claims that DFS violated that right; and (3) DFS did not violate the Respondent's Fourteenth Amendment right to Due Process.

---

1. *Division of Family Services v. Barras,* Del. Fam., CK96–4457; Nicholas, J. (August 14, 1997).

## I. Family Court's Jurisdiction Over 42 U.S.C. § 1983

■ The Family Court of the State of Delaware is a statutory court and, as such, only exercises jurisdiction as provided by the legislature. The Family Court has exclusive original jurisdiction as set out in 10 *Del. C.* § 921. This exclusive original jurisdiction includes all proceedings concerning: "Any child found in the State who is alleged to be dependent, neglected, or delinquent except as otherwise provided in this chapter." 10 *Del. C.* § 921(1). The Family Court also has exclusive original jurisdiction over: "Enforcement of any law of this State or any subdivision or any regulation promulgated by a government agency, or any petitions or actions, for the education, protection, control, visitation, possession, custody, care or support of children." 10 *Del. C.* § 921(3). · Clearly, the Family Court has jurisdiction over the Respondent's counterclaim to the custody petition brought by DFS. To the extent that my August 14th decision suggested that the mere voluntary withdrawal of the underlying custody petition rendered the Respondent's counterclaim moot, I hereby clarify my position. The Court's jurisdiction over the counterclaim did not end when DFS voluntarily withdrew its Petition.[2] Indeed, after DFS dismissed its custody petition on the morning of trial, we then proceeded to trial solely on the issues contained within the Respondent's counterclaim. Thus, the issues raised by the counterclaim were fully litigated. However, in my view, the circumstances surrounding the children's return to the home of the natural mother rendered the Respondent's claims moot. I will discuss ripeness and mootness in more detail later in this decision.

■ State and federal courts have concurrent jurisdiction for hearing and enforcing § 1983 claims.[3] The Family Court has exercised jurisdiction over § 1983 claims in the past.[4] In *Morgan*, the claimant's § 1983 action was based on alleged Constitutional violations perpetrated by DFS. In the present case, the § 1983 claims are based on alleged violations of a right arising under a federal statute, as well the Due Process Clause of the United States Constitution. I agree with Judge James that the Family Court has jurisdiction to hear a § 1983 claim based on a Constitutional violation resulting from the failure of the State to fulfill its obligations under 29 *Del. C.* § 9003.[5] For the following reasons, I find that the Family Court also has jurisdiction to hear § 1983 claims based on a violation of a federal statutory right in the context of a case involving the State's alleged failure to perform its duties pursuant to 29 *Del. C.* § 9003.

■ Section 1983 does not create substantive rights. Rather, it provides a procedural mechanism whereby an individual can assert a private right of action against someone who, while acting under the color of state law, violated that individual's rights secured by the Federal Constitution or federal law. The statute provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or

---

2. "If a counterclaim has been pleaded by a respondent prior to the service upon the respondent of the petitioner's motion to dismiss, the action shall not be dismissed against the respondent's objections unless the counterclaim can remain pending for independent adjudication by the Court." Fam. Ct. R. 41(a)(2)(in pertinent part).

3. *Maine v. Thiboutot*, 448 U.S. 1, 10, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Kerns v. Dukes*, 707 A.2d 363, 367.

4. *Morgan v. Powell/DFS*, Del.Fam., 659 A.2d 1243 (1994); *In the Interest of Titica Morris*, Del.Fam., File No. CS89–3742, Millman, J. (May 14, 1991).

5. Judge James ruled that the federal § 1983 claim was properly before the Family Court so long as the underlying claim was within the jurisdiction of the Court. Judge James reasoned that the Family Court's ruling on the state claim might preclude the claimant from seeking redress in another court for the federal Constitutional violation.

usage, of any state or territory or the District of Columbia, subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunity secured by the constitution and laws, shall be liable to the party injured in an action at law, suit and equity or other proper proceedings for redress.

42 U.S.C. § 1983.

The Respondent has asserted that an employee of DFS, a state agency acting under its authority pursuant to 29 *Del. C.* § 9003, has deprived her of substantive rights guaranteed by the AACWA and the Due Process Clause of the Fourteenth Amendment.[6] The Family Court has jurisdiction to hear such a claim by virtue of its concurrent jurisdiction to hear § 1983 claims and by reason of the legislature granting the Family Court jurisdiction over custody cases involving dependent and/or neglected children.

 Although the Family Court has jurisdiction to hear § 1983 cases, it is not required to do so.[7] Generally, if the underlying state claim is one which the state court would normally hear, then the state court is not free to refuse to hear the federal claim.[8] In the present case, the underlying counterclaim is within the jurisdiction of the Family Court; hence, the federal claim also belongs in Family Court.

 DFS argues that the Respondent's § 1983 claim belongs in the Federal District Court for the District of Delaware or the Delaware Superior Court because the

Family Court is barred from hearing such claims by the Seventh Amendment of the United States Constitution and Article I §§ 4 and 9 of the Delaware Constitution. The essence of DFS's argument is that § 1983 claims sound in tort and subject public employees to possible money damages; therefore, these cases must be tried before a jury. I agree that Family Court might be barred from hearing a § 1983 claim if a claimant was seeking compensatory damages. This is not such a case. The Respondent has only asked for declaratory relief.[9] The proper forum for a § 1983 claim is based on the relief sought.[10]

Having determined that the Family Court has jurisdiction over Respondent's § 1983 claims, it is now necessary to determine if there is an enforceable right upon which such relief can be granted. The Respondent's claim under the AACWA and the Constitution will be examined separately.

*A. Enforceable Rights Under the AACWA*

As a threshold matter, I will clarify the portion of my earlier decision as to the precedential value of *Suter*.[11] In *Suter*, the Supreme Court ruled that there was no enforceable right under the reasonable efforts provision of the AACWA. *Suter* was heralded by some as a case in which the Court not only struck down any enforceable rights under the entire AACWA, but also rewrote the test for determining whether a federal statute created an en-

---

6. Although it is unclear whether the Respondent has preserved any State Constitutional claims based on alleged violations of her rights under Article I, Section 9 of the Delaware Constitution, under the facts of the present case, the analysis of a due process violation under the Delaware Constitution would be the same as the analysis of the 14th Amendment Due Process claim.

7. *Martinez v. California,* 444 U.S. 277, 283 note 7, 100 S.Ct. 553, 62 L.Ed.2d 481, *reh'g denied,* 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980).

8. *Morgan* at 1245, *citing Martinez* at 283, 100 S.Ct. 553.

9. The Respondent's request for injunctive relief was dropped.

10. *See Kerns v. Dukes,* Del.Supr., 707 A.2d 363, 368(1998).

11. *Suter v. Artist M.,* 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992).

forceable right for purposes of bringing a § 1983 action.[12] Such broad interpretations of *Suter* have since proven to be incorrect.

I rely on two authorities in determining the significance of *Suter*. First, Congress legislatively overturned *Suter*, in part, by an amendment to the AACWA.[13] This amendment limited *Suter* to its holding on the enforceability of the reasonable efforts clause of the AACWA. Furthermore, the Supreme Court itself has addressed its holding in *Suter* in a more recent § 1983 case.[14] In *Blessing*, the Supreme Court described *Suter* as only pertaining to whether there was an enforceable right arising under the reasonable efforts clause. In light of 42 U.S.C. § 1320a–2 and *Blessing*, I find that *Suter* does not control the Respondent's § 1983 claims based on the Constitution or the adequate case plan and services clauses of the AACWA.[15]

The Supreme Court has developed a framework for analyzing whether a particular federal statutory provision gives rise to a federal right. First, the provision in question is subjected to the following three-part test: (1) Congress must have intended that the provision in question benefit the plaintiff; (2) the provision must be couched in mandatory rather than precatory terms; and (3) the provision must not be so vague or amorphous that its enforcement would strain judicial compe-

tence.[16] If a statutory provision meets this three-prong test, then a rebuttable presumption exists that the § 1983 action is enforceable. However, if Congress has foreclosed a remedy under § 1983, the action must be dismissed.[17] "Congress may do so expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating an enforcement scheme that is incompatible with individual enforcement under § 1983." [18]

The Respondent easily meets the first prong of the test. The AACWA was enacted, in part, to prevent the removal of children from their families and to facilitate the reunification of families whose children are in foster care.[19] As the natural mother of two children in foster care, the Respondent was a beneficiary of this legislation aimed at preserving the family unit.

The Respondent also meets the second prong of the test. The case plan provision and the unified services provisions are all couched in mandatory terms. Each provision uses the term "shall" when describing the state's obligations under the act.[20]

### 1. The Services Provisions of the AACWA

██ The third prong requires a more difficult analysis. Each of the provisions must be examined separately to determine whether the terms of the provision are of a

---

**12.** See generally Lisa L. Frye, *Suter v. Artist M. and Statutory Remedies Under Section 1983: Alteration Without Justification,* 71 NC L. Rev. 1171, 1202–1204 (1993).

**13.** 42 *U.S.C.* § 1320a–2 (1994).

**14.** *Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 1360, 137 L.Ed.2d 569 (1997).

**15.** 42 *U.S.C.* §§ 622(b)(2), 625(a)(1)(A)–(C), 627(a)(2)(B), 671(a)(4).

**16.** *Blessing* at 1359.

**17.** *Blessing* at 1360 *citing Smith v. Robinson,* 468 U.S. 992, 1005, n. 9, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984).

**18.** *Blessing* at 1360 *citing Livadas v. Bradshaw,* 512 U.S. 107, 133, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994).

**19.** ◦42 U.S.C. § 671(a); S.Rep. No. 96–336, p. 12 (1979).

**20.** "Each plan for child welfare services under this subpart **shall**—" 42 *U.S.C.* § 622(b)(emphasis added); "In order for a State to be eligible for payments under this part, it **shall** have a plan approved by the Secretary which—(4) provides that the State **shall** assure that the programs at the local level assisted under this part **will** be coordinated with the programs at the State or local level... (16) provides for the development of a case plan ..." 42 U.S.C. §§ 671(a)(4)(16)(emphasis added).

nature so vague or amorphous that it would strain judicial competence to enforce them. I will address the services provisions first.

Section 625(a)(1) of AACWA reads:

(a)(1) For purposes of this subchapter, the term 'child welfare services' means public social services which are directed toward the accomplishment of the following purposes: (A) protecting and promoting the welfare of all children, including handicapped, homeless, dependent, or neglected children; (B) preventing or remedying, or assisting in the solution of problems which may result in, the neglect, abuse, exploitation, or delinquency of children; (C) preventing the unnecessary separation of children from their families by identifying family problems, assisting families in resolving their problems, and preventing breakup of the family where the prevention of child removal is desirable and possible; (D) restoring to their families children who have been removed, by the provision of services to the child and the families; (E) placing children in suitable adoptive homes, in cases where restoration to the biological family is not possible or appropriate; and (F) assuring adequate care of children away from their homes, in cases where the child cannot be returned home or cannot be placed for adoption.

42 U.S.C. § 625(a)(1).

Section 622(b)(2) reads:

"Each plan for child welfare services under this subpart shall—(2) provide for coordination between the services provided for children under the plan and the services and assistance provided under subchapter XX[21] of this chapter, under the State program funded under part A of this subchapter,[22] under the State plan approved under subpart 2 of this part, under the State plan approved

under part E of this subchapter,[23] and under other State programs having a relationship to the program under this subpart, with a view to provision of welfare and related services which will best promote the welfare of such children and their families . . . ."

42 U.S.C. § 622(b)(2).

Section 671 (a)(4) reads:

In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which— (4) provides that the State shall assure that the programs at the local level assisted under this part will be coordinated with the programs at the State or local level assisted under parts A and B[24] of this subchapter, under subchapter XX of this chapter, and under any other appropriate provision of Federal law.

42 U.S.C. § 671(b)(4).

I agree with the Respondent's assertion that, in order to receive federal funds a State must design a program that meets all of the above provisions. However, it does not necessarily follow that these provisions give rise to an individual federal right enforceable under § 1983. These provisions are designed to ensure that services delivered pursuant to the AACWA, namely child welfare services and case plans, are coordinated with each other. The provisions go one step further and require that the State coordinate these services with other related welfare services in order to best promote the welfare of children and their families. These provisions are designed to promote a general statutory scheme that, among other goals, aims to prevent the unnecessary separation of children from their families and to facilitate the reunification of families already separated. They are not couched in

---

**21.** Broad based services.

**22.** AFDC benefits.

**23.** Federal Payments for Foster Care and Adoption Assistance of the AACWA.

**24.** Child and Family Services of the AACWA.

specific enough terms to give rise to a private cause of action.

The provisions at issue in the present case are analogous to the provisions of Title IV–D of the Social Security Act that were at issue in *Blessing* and the reasonable efforts provision at issue in *Suter*. In *Blessing* the Supreme Court held that the provision of the Social Security Act that required participating states to operate their child support system in substantial compliance with federal guidelines did not give rise to individual rights under § 1983. Rather, the substantial compliance provision at issue in *Blessing* was intended to provide a yardstick whereby the statewide system could be evaluated for the purpose of determining if the aggregate services provided substantially complied with Congress' directives. Similarly, the reasonable efforts provision at issue in *Suter* was intended to ensure that the state formulate a plan that complied with federal guidelines. None of these provisions were intended to measure whether any one individual received appropriate services. Likewise, the services provisions in the present case are most reasonably interpreted as providing a mechanism whereby participating states are required to coordinate services so as to facilitate reunification. It would strain judicial competence to interpret §§ 622(b)(2), 625(a)(1) and 671(a)(4) as providing individual rights to specific services. Therefore, I find that these provisions fail the third prong of the test.

### 2. The Case Plan Provision of the AACWA

 In contrast to the coordinated services provisions and the child welfare provision, the case plan provision is complemented by a definitional section. Section 675(1) sets forth minimum requirements for case plans that ensure that the State's development of individual case plans are more than a formality. Furthermore, this definition provides a sufficiently detailed and specific directive that the federal right created thereunder is not so vague and amorphous that enforcing it would strain judicial competence. Therefore, I find that the AACWA gives rise to a federal right to a case plan that is enforceable under § 1983.[25]

I further find that Congress did not foreclose enforcement of the case plan provision under the AACWA. The AACWA does not expressly forbid a § 1983 action; indeed, by legislatively limiting *Suter* to the reasonable efforts section, Congress indicated that it did not want to foreclose possible § 1983 actions under other sections of the AACWA. Moreover, the presence of a remedial scheme whereby individuals may seek administrative review of their case plans does not foreclose a § 1983 action.[26]

Although I believe the Respondent's case is moot for reasons that I will address below, I will briefly comment on the merits of her claims. To the extent that the Respondent's argument is based on the premise that homeless individuals must be provided with a case plan that provides specific assistance in securing housing, the Respondent's argument fails. In my August 14th decision I adopted the reasoning of the Chancery Court as set forth in *Tilden*.[27] Because I framed my discussion of *Tilden* in terms of reasonable efforts, I will revisit that case. I adopt the reasoning of Vice Chancellor Chandler as to why the case plan provision of the AACWA does not provide for specific services. The Vice Chancellor thoroughly examined the language of the statute and the legislative

**25.** *Accord Lynch v. Dukakis,* 719 F.2d 504, 513 (1st Cir.1983), *aff'g Lynch v. King,* 550 F.Supp. 325 (D.Mass.1982).

**26.** *See Wilder v. Virginia Hospital Assn.,* 496 U.S. 498, 522, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (finding that the administrative

review scheme of the Medicaid Act was not sufficiently comprehensive to foreclose a § 1983 action).

**27.** *Tilden v. Hayward,* Del.Ch., 1990 WL 131162, Chandler, V.C. (Sept. 10 1990).

history in arriving at the conclusion that "[h]ad Congress wanted to specify the precise services necessary to make a case plan meaningful, it could have required housing subsidies or like assistance as a necessary component of a meaningful case plan. That it did not so state fully answers the plaintiff's arguments." [28]

My holding in this case should not be read to mean that there could never be a case before the court where DFS's failure to address homelessness in a meaningful way would not be sufficient to defeat a petition for custody based on dependency or neglect. Once again I adopt the reasoning of *Tilden*. "Families that have been the subject of voluntary or involuntary proceedings may challenge in the Family Court the bona fides of the State's efforts to meet its statutory obligations, and thereafter may seek review of any adverse determination in the Delaware Supreme Court." [29] Indeed the Delaware Supreme Court held that DFS's failure to address homelessness in a case involving termination of parental rights was fatal to the State's case.[30] Similarly, on a case-by-case basis, the Family Court must consider whether DFS has adequately addressed issues such as homelessness in its efforts to reunify families.

 The facts of the present case show that DFS did attempt to address homelessness issues with the Respondent. The Respondent testified that she refused DFS's initial efforts to provide first month's rent and a security deposit because she wanted to stay at Mary Mother of Hope House long enough to save money for additional rent payments. Although this may have been a wise decision on her part, nonetheless, it was a decision to forego housing services offered by DFS. The Respondent also testified that DFS offered to provide her with funds to visit her chil-

dren, but that she declined those offers because she wanted DFS to pay for the children's bus fare to Wilmington and taxi fare from the bus station to Mary Mother of Hope House. Finally, the Respondent testified that she refused to sign any case plans on the advice of her lawyer. In sum, upon consideration of all the evidence presented at trial, I conclude that DFS offered the Respondent meaningful services which she rejected because they were not the services she wanted. Her refusal of the services offered did not render them meaningless.

### B. Due Process Violations

 In addition to her § 1983 claim based on violations of the AACWA, the Respondent· also raises a § 1983 claim based on alleged violations of her right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution. The Respondent asserts that DFS's delay in returning her children violated her fundamental due process right to family integrity. The Respondent's argument is somewhat circular in that she acknowledges that her homelessness prevented DFS from returning her children at an earlier date, nonetheless maintaining that DFS's failure to provide housing services was the real reason that reunification was not achieved more promptly.

 This issue is controlled by *Morgan*. "The Due Process Clause of the Constitution imposes no affirmative obligations on a state to provide services to the general public. Instead, such duties attach in circumstances where the state, by affirmative exercise of its power, so restrains an individual's liberty that it renders him unable to act on his behalf." [31] The Respondent would have me break new legal ground by ruling that the Federal

---

**28.** *Tilden* at *6.

**29.** *Id.*

**30.** *In the Matter of Derek Burns*, Del.Supr., 519 A.2d 638, 644 (1986).

**31.** *Morgan* at 1247, *citing DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189, 197–203, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

Constitution requires the states to affirmatively remove obstacles not of its own making so that its citizens may enjoy a better life.[32] I decline to do so.

## II. *Ripeness/Mootness*

██ In my August 14th decision I ruled that the issues before the court were moot. I maintain that the issues are moot; however, I will clarify my reasons for so holding. As I stated earlier in this opinion, the voluntary withdrawal of DFS's custody petition, in and of itself, did not render the Respondent's counterclaim moot. To the extent that my earlier decision implied that the Respondent's counterclaim was moot for that reason alone, and to the extent that it implied that the Respondent's counterclaims were moot due to the Family Court's lack of jurisdiction over the § 1983 claims pursuant to my reading of *Suter*, I was wrong.

The Respondent argues that her case is ripe for review by this court and that a declaratory judgment is the appropriate remedy. I agree that the Respondent's issues are ripe for review, and that, in general, the Family Court has authority to grant a declaratory judgment.[33] However, the facts of this case render the Respondent's claims moot.

The 3rd Circuit dealt with a similar issue involving an allegation that visitation afforded by the Pennsylvania counterpart to DFS was illegal and violated rights guaranteed under the AACWA and the Constitution.[34] In *Winston* the 3rd Circuit acknowledged that it could not exercise jurisdiction unless there was an actual, ongoing case or controversy.[35] The 3rd

Circuit relied on factual findings indicating that this specific child's circumstances made it likely that he would return to foster care and that the visitation issue would most likely evade review. Likewise, the United States Supreme Court exercised jurisdiction over a case brought under the Education of the Handicapped Act despite the plaintiff's having moved from the defendant school district.[36] The Supreme Court relied on lower court findings that there was a reasonable expectation that he would be subjected to similar policies in the future and that his claims would evade review as he shuffled between school districts.

In the present case there were insufficient findings to support the proposition that the Respondent's children would be placed in foster care in the future. Furthermore, if that were to happen, the Respondent's future claims would not evade review. She would be able to challenge DFS through the administrative review process [37] available to her or by asserting a counterclaim in the context of a custody hearing. As to the Respondent's claim that DFS will simply dismiss custody petitions in order to avoid judicial review, there was simply no evidence presented in the record below to indicate that DFS dropped its custody petition for any other reason than that the natural mother had found a place to live and the children were living with her. And in fact, in her case, the Respondent received the benefit of a trial on the merits of her counterclaims.

## III. *Respondent's Failure to Name a Person*

██ The Respondent has filed a Motion for Leave to Amend the An-

**32.** *See Morgan* at 1247; *See also Tilden* at *10.

**33.** The Family Court has authority to issue a declaratory judgment pursuant to Family Court Civil Procedure Rule 57.

**34.** *Winston v. Children and Youth Services of Delaware County,* 948 F.2d 1380 (3rd Cir. 1991).

**35.** *Id.* at 1383.

**36.** *Honig v. Doe,* 484 U.S. 305, 319–20, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

**37.** Each state is required to provide a system whereby recipients of aid under the AACWA are given a hearing to address grievances. 45 C.F.R. § 205.10. The Delaware hearing process is detailed in DFS administrative policy directive # 6011, December 15, 1995.

swer/Counterclaim in order to name Suzanne Madanat, Respondent's caseworker, as a defendant and argues that there would be no prejudice to Ms. Madanat because she appeared as a witness at trial. DFS opposes the motion and asserts that it would be impermissible to add a party defendant on remand after a full trial on the merits. DFS further asserts that the Respondent's failure to name a person may be jurisdictionally fatal to any § 1983 claim since § 1983 requires action by a "person" and not an agency. While there may be merit to this claim, I decline to rule on the Respondent's Motion to Amend.

In proceeding on a matter remanded to a trial court from an appellate court, the freedom of the trial court to act is constrained by the mandate of the appellate court.[38] I am bound by this doctrine and must proceed in accordance with the mandate delivered to me from the Supreme Court. That mandate was precise, explicit and limited to two issues alone: (1) whether the Family Court had jurisdiction over the Respondent's § 1983 claims; and (2) whether those claims were viable notwithstanding the dismissal of the underlying custody petition.

The issue of naming a person as a defendant was raised for the first time on appeal and clearly, the Supreme Court could have directed me to rule on it on remand. It did not. Instead, I was ordered to address only the substantive issues contained within the mandate. In fact, pursuant to Supreme Court Rule 19(c), that court reserved unto itself jurisdiction over all matters outside the parameters of the mandate.

Since any ruling on the merits of this new issue could divest Family Court of subject matter jurisdiction and thereby nullify the express purpose of the mandate, I decline to rule on the motion without further instruction from the Supreme Court.

**IT IS SO ORDERED.**

---

**38.** *Insurance Corp. of America v. Barker,* Del. Supr., 628 A.2d 38, 40–41 (1993).