**P.L.C., Plaintiff,**

v.

**The HOUSING AUTHORITY OF the COUNTY OF WARREN, Lorence F. Brown, Carl E. Whipple, Ralph Grimm, Gerry Archibald, Ann Lesser, Frank Fago, Defendants.**

**Civ. A. No. 84–54 ERIE.**

United States District Court,
W.D. Pennsylvania.

June 5, 1984.

Richard A. Herman, Jr., Warren, Pa., for plaintiff.

Jack M. Gornall, Erie, Pa., for defendants.

## MEMORANDUM OPINION

WEBER, District Judge.

This matter is before the court on defendants' motion to dismiss plaintiff's civil rights complaint pursuant to Federal Rule 12(b)(6), failure to state a claim.

■ The motion must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Furthermore, because we are dealing with a motion to dismiss for failure to state a cause of action under Fed.R.Civ.P. 12(b)(6), which would be dispositive on the merits, all allegations of the complaint are deemed to be true. *Walker Process Equip. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965). For a recently published full discussion of Rule 12(b)(6) and distinctions to be drawn between it and a motion to dismiss pursuant to Federal Rule 12(b)(1) with respect to the issue of subject matter jurisdiction, *see, Nguyen v. U.S. Catholic Conference*, 548 F.Supp. 1333 (W.D.Pa.1982), aff'd. 719 F.2d 52 (3d Cir. 1983). The opinion also extensively treats the concept of state action.

The plaintiff, formerly a tenant in a Warren County Housing Authority apartment, was raped by the building maintenance man, an employee of the Authority. Plaintiff alleges that her assailant, Bernard Ryan, was hired notwithstanding the fact that the Authority knew or should have known of Ryan's prior convictions for rape and the fact that he was an alcoholic. Plaintiff alleges that the Authority's actions were negligent, reckless and carried out with callousness and indifference to their predictable consequences, and therefore violative of her constitutional rights. According to the allegations Ryan used keys furnished him by the Authority to enter plaintiff's apartment where he held a knife to her throat, threatened to kill her, and repeatedly raped and assaulted her. Plaintiff filed this and a similar action in state court against the Authority, its Executive Director, Lorence F. Brown, and other members of the Authority.

We must assume at this stage in the proceedings, based upon allegations of the complaint, that defendants knew or should have known that the employ of Bernard Ryan created a clear and present danger that such an incident as this would occur.

■ Our inquiry for purposes of disposing of this motion to dismiss focuses upon whether plaintiff has made out a claim of a violation of a constitutional right and whether that violation was carried out by means of state action. We believe that as an initial matter plaintiff's right to be free from such bodily injury and harm is a right of constitutional magnitude. The more difficult question is whether the conduct of the Authority and its directors constitute state action. It is generally recognized that while 42 U.S.C. § 1983 represents a species of tort law, generally federal relief is not available for strictly tortious or negligent conduct on the part of third parties. However, if there is a sufficient nexus between the harm and the officials involved then stat action will be imputed to those who may have had the power or responsibility to prevent the resultant harm. Accordingly, the question of whether certain conduct is state action for purposes of invoking relief under federal statute turns on the proximity or the remoteness of the conduct of state officials to the injury. *See, Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) and *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). In *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982) the Court stated, "the purpose of the requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains."

■ Reported cases germane to the present case treat the issue in the context of the release of state or federal prisoners who subsequently commit tortious acts upon members of the general population.

A similar case, *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), considered the question of the proximity of state parole officials' conduct in the resultant injury. In *Martinez*, the Parole Board released a rapist who five months later raped and killed a girl whose

estate subsequently brought a civil rights claim against the State of California. The Court concluded that the action of the parolee five months after his release could not be characterized as state action. The Court held that the action of the state did not itself deprive the victim of life under the 14th Amendment. Because the parolee was not an agent of the State Parole Board the victim's death was too remote a consequence of the Parole Board's action to hold it responsible under Federal Civil Rights Law. The Court concluded that while Section 1983 claims have been described "as a species of tort liability" it is clear that not every injury in which a state official has played some part is actionable under that statute. *See generally, Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

Several circuits have subsequently considered similar issues. In *Wright v. City of Ozark*, 715 F.2d 1513 (11th Cir.1983), a woman raped by an unknown assailant brought an action for damages under Section 1983 against the City, the Mayor of the City, the Chief of Police, and a member of the Police Department alleging that the defendants had deliberately suppressed information of prior rapes in a certain area of the city to avoid adverse publicity. The 11th Circuit affirmed the district court's dismissal of the complaint for failure to state a claim under Section 1983. The plaintiff characterized the defendants' conduct as constituting a high degree of gross negligence in reckless indifference to her rights amounting to wilful and intentional misconduct. Plaintiff acknowledged that defendants had not intentionally singled her out to be denied protection from a rapist and there was no allegation that the defendants knew of plaintiff before the rape occurred. Thus there was no special relationship between plaintiff and defendants.

Relying on *Martinez*, the court in *Wright* reemphasized that the due process clause does not protect a member of the public at large from the criminal acts of a third person. The court concluded that "even if the state was remiss in allowing the third person to be in the position in which he might cause harm to a member of the public, ... in the absence of a special relationship between the victim and the criminal, or between the victim and the state", there existed no constitutionally protected right.

In *Fox v. Custis*, 712 F.2d 84, (4th Cir. 1983), plaintiff brought an action against state parole officers alleging that they failed to have a state parolee committed after violations of the terms of his parole. The parolee committed various crimes against the claimant all involving bodily harm. Plaintiff alleged that the actions of the defendants deprived her of liberty and property and that *Martinez* was distinguishable because of the short time interval between the conduct and the alleged injury and because defendants here were directly responsible for the supervision of the parolee. The district court dismissed all plaintiff's Section 1983 claims and held the defendant immune under state law claims. The Circuit took a different analytical approach than that suggested by the appellant and held that there was no constitutional right in the general public to be protected by the state from madmen or criminals, citing *Bowers v. DeVito*, 686 F.2d 616 (7th Cir.1982). The court acknowledged that a constitutional right and infringement may arise out of a special relationship, custodial in nature, created by the state for particular persons. Examples considered by the court were inmates in state prisons and patients in various institutions. The court cited a long list of authorities for these relationships. The court concluded that the situation was similar to that in *Martinez* where the defendants were unaware that these claimants faced any special danger as opposed to the public at large.

In *Bowers v. DeVito, supra*, state officials released a dangerous mental patient and he subsequently killed plaintiff's decedent. The district court dismissed the federal civil rights claim and remanded all state claims to the state court under the authority of *Martinez*. The court conclud-

ed that there must be a deprivation of a constitutional right and there was no such right to be protected by the state where the actions were taken by a third party. The court noted that there is a constitutional right not to be murdered by a state officer where the state itself violates the 14th Amendment when its officer acting under state law deprives a person of life without due process. The court did recognize, however, that if the state puts a person in a place of danger from private persons and then fails to protect him, it cannot be heard to say that its role was passive. This is the rationale underlying the obligation of the state to protect a state prisoner from the violence of another prisoner. *See, e.g. Spence v. Staras*, 507 F.2d 554 (7th Cir. 1974).

In *Humann v. Wilson*, 696 F.2d 783 (10th Cir.1983), the court re-emphasized the principle that no constitutional claim could be found where the victim did not stand in any special relationship to the third party from which the responsible state officials, the parole officers, might have inferred a special danger. The *Humann* court considered a similar point made in *Reiser v. District of Columbia*, 563 F.2d 462 (D.C. Cir.1977), where a negligence suit was brought in federal court based on diversity jurisdiction by the father of a woman who was raped and murdered by a District of Columbia parolee. The parolee had been assisted by the Department of Corrections in obtaining employment at the apartment complex where the murder took place. The action was sustained on state law grounds. We agree that *Reiser* is distinguishable insomuch as it was decided on state law grounds, however, it is useful as a guide in determining the special relationship between the victim, the authority and the third party.

In the present case we find that the special relationship is in fact stronger than *Reiser* where the apartment complex was privately maintained as opposed to the public housing run by the Authority here.

Exploring the special relationship here we consider the legislative findings of the general assembly of the Commonwealth of Pennsylvania which led to the passage of the housing authority law, P.L. 955, § 1, May 28, 1937, 35 P.S. § 1541 et seq. are set forth at 35 P.S. § 1542. Among the declarations of policy appear the following findings:

(a) There exist in urban and rural communities within the various counties of this Commonwealth, numerous slums and unsafe, unsanitary, inadequate or overcrowded dwellings, which conditions are accompanied and aggravated by an acute shortage of decent, safe, and sanitary dwellings within the financial reach of persons of low income, such conditions arising from overcrowding, dilapidation, faulty construction, obsolete buildings, lack of proper light, air and sanitary facilities.

(b) The existence of any of the above enumerated conditions prejudicial to the welfare of the people of this Commonwealth because such conditions—... (4) increase the violation of the criminal laws of the Commonwealth so as to jeopardize the safety and well being of the inhabitants thereof...

Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to promote the health and welfare of the inhabitants thereof by the creation of corporate and politic bodies to be known as housing authorities. The public purposes for which such authorities shall operate shall be—... (2) the providing of safe and sanitary dwelling accommodations for persons of low income...",

citing 35 P.S. § 1542.

The powers of the authority are set at 35 P.S. § 1550 and include the following:

... All powers necessary or appropriate to carry out and effectuate the purpose and provisions of (Act) ... (b) to determine where unsafe or unsanitary dwelling or housing conditions exist or where there is a shortage of safe and sanitary dwelling accommodations for persons of low income.

We find that there are several critical factors which bear upon the relationship between the plaintiff and the housing authority, and the plaintiff and her assailant. Pursuant to Pennsylvania law the housing authority was formed with a specific purpose of providing low income, safe and sanitary housing facilities. Pursuant to those provisions of state law, it was expected and encouraged that citizens would rely upon the availability of such housing and would actively seek out such public accommodations. It is likely that as a result they would include as a factor in their decision the assurances that such housing would adhere to certain minimal standards of safety as such assurances appeared in state law. In addition we find that the authority had control of the premises where plaintiff lived at the time of her assault. It allocated the living area to this particular tenant. It provided the essential services of habitable space, protected from the wind and the weather. It provided utilities of water, electricity, heat and sewage. It provided a secure lock and door so that the tenant and her personal property could be secured therein from invasion by criminal action against herself and her property. We find as such that the authority and its officials stood in a special relationship to this particular plaintiff. The relationship differs only in degree from that of an inmate in a state institution or a patient in a state hospital whose constitutional rights have been repeatedly recognized.

The Authority then hired an employee to help administer the services that it was statutorily bound to provide and thereafter supplied that employee with a pass key to all apartment complexes giving access to the particular apartment in which the plaintiff lived. In light of its special relationship to the plaintiff, and taking into account its statutory responsibility to provide safe and sanitary housing, the authority was bound to exercise due diligence in the carrying out of its custodial responsibilities. It is alleged in the hiring process here the authority failed to take the reasonable precaution of screening this employee which, if properly done, would have revealed that he was possessed of a long prior criminal record of rapes.

It does little good to do as defendant would have us do and simply label these actions as tortious requiring a dismissal of the instant suit. We must rather examine the actions to determine if this is a constitutional tort which allows for an action under the civil rights act. Such eventuality was specifically acknowledged in *Martinez.*

The Housing Authority is a public body exercising a governmental function. The reason for the exercise of this governmental function was the legislative determination that a certain portion of the population was ill-housed, that it lacked the facilities for minimal standards of cleanliness, health and safety in available housing. As a result not only were these people deprived, but the whole population was adversely affected by their presence in concentrated areas which provided a breeding ground for ill health and crime which menace the entire community. This was the problem which the legislature faced and for which it embarked upon a program of public action. The construction of adequate, clean, healthy and safe dwellings ensued, subsidized to a large extent by the federal government, the state government and municipal corporations. Both the public at large and the individual tenants were beneficiaries of this program. By accepting this benefit the plaintiff nevertheless became subject to the administrative system set up by the authority. To this extent we find that the plaintiff stood in a special relationship to the Authority unique from the public at large. For her security she surrendered the right of entry to her apartment to the Authority which undertook the obligation of security, and provided an employee with a key by which he could gain entry in order to carry out the Authority's function and responsibilities. This employee used the key, his symbol and instrument of governmental authority, to gain entrance to commit assault and rape. We do not find that the liability of the officials of the Authority or the Authority itself turns

on the existence of vicarious liability. We find that the allegations of the complaint make out a claim of primary liability on the part of Authority officials. We reserve for later consideration whether the Authority itself as a regularly constituted agency of the state is liable under a claim of respondeat superior. See, generally, *Monell v. Dept. of Social Services*, 436 U.S. 658, 691–94, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978); *Lopuszanski v. Fabey*, 560 F.Supp. 3 (E.D.Pa.1982).

We find that plaintiff stood in a special relationship to the maintenance man that should have alerted the Authority to a special danger to her. We do not find that the actions of the maintenance man were so remote a consequence of the Authority's alleged actions as to bar recovery as a matter of law.

What reasonable expectations of recognition of her constitutional rights did plaintiff have? By moving into governmental controlled living quarters she had a right of expectation of freedom from bodily harm. But it was not from a third party that she was harmed, it was by an agent of that governmental authority who gained access not by stealth or some negligence but by reason of his possession of the instrument of authority.

In conclusion, we find that the allegation of negligent conduct on the part of the Authority and its membership in hiring an employee with a prior criminal record of rape and assault is sufficient to state a cause of action under § 1983.

Wherefore, defendants' motion to dismiss is denied and an appropriate order will issue.