Brenda Lee CROSBY, Administratrix of the Estate of Richard Keith Crosby, a minor; Brenda Lee Crosby, in her own right; Cherie Nelson, a minor, by Brenda Lee Crosby, natural mother and guardian; Plaintiffs,

v.

LUZERNE COUNTY HOUSING AUTHORITY, David Fagula, Ron Fedoreyzk and John Walters, Defendants.

Civ. No. 90–0153.

United States District Court,
M.D. Pennsylvania.

April 20, 1990.

Raymond J. Sobota, John Raymond Sobota, Wilkes–Barre, Pa., for plaintiffs.

Charles J. Bufalino, III, West Side Bank Professional Center, W. Pittston, Pa., for defendants.

## MEMORANDUM

NEALON, District Judge.

Currently before the court is the motion of the defendants to dismiss this action for failure to state a claim upon which relief can be granted filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)). *See* document 4 of record. This court's jurisdiction over the present action is predicated upon 42 U.S.C. § 1983 (§ 1983) and the doctrine of pendent jurisdiction. For the reasons that follow, the motion to dismiss the action will be granted.

### I. *Background*

Plaintiffs filed the above captioned complaint on January 25, 1990. *See* document 1 of record. According to the averments of the complaint,[1] plaintiff Brenda Lee Crosby (Mrs. Crosby), contacted the defendant Luzerne County Housing Authority (the Authority) and defendant John Walters (Walters), the Authority's "Section 8" coordinator, in April 1985 in an attempt to obtain low income housing. "Section 8" housing is a housing program by which the federal government subsidizes a portion of a qualifying tenant's rental payments. *See id.* at ¶ 10. Mrs. Crosby qualified for Section 8 housing and on May 24, 1985 entered into an Assisted Lease Agreement with George Kotch (Kotch) for the rental of a three-bedroom dwelling unit on the second and third

---

1. In setting out the factual history of this case, the court is obliged, for purposes of the present motion, to accept all well-pleaded allegations of the complaint as true. *Kutchka v. Kile,* 634 F.Supp. 502, 505 (M.D.Pa.1985) (Nealon, C.J.)

floors of a building owned by Kotch. *See id.* at ¶¶ 11 and 12. Mrs. Crosby thereafter occupied the premises along with her minor children Richard Keith Crosby, Shaunah Lampman, and Cherie Nelson. *See id.* at ¶ 13.

On February 12, 1989, a fire of unknown cause and origin started in Mrs. Crosby's apartment while Mrs. Crosby and two of her minor children, Richard Keith Crosby and Cherie Nelson, were present. *See id.* at ¶ 14. The fire, which is presumed to have originated in the kitchen, spread to a stairway which led from the kitchen to the third floor of the residence where the children's bedrooms were located. *See id.* Mrs. Crosby and Cherie Nelson managed to vacate the premises safely, but Richard Keith Crosby, who was on the third floor, was unable to escape and died of carbon monoxide poisoning. *See id.* at ¶ 15.

The complaint further alleges that immediately prior to the initail occupancy of the premises by Mrs. Crosby, the defendants in this action inspected and approved the premises pursuant to obligations of the Department of Housing and Urban Development (HUD) Regulations and the Housing Authorities Law of the Commonwealth of Pennsylvania, despite the presence of certain deficiencies which defendants did not communicate to Kotch or Mrs. Crosby. *See id.* at § 16. Additionally, the complaint continues, the Authority had instructed and advised Kotch to use a "chain ladder" or "fire ladder" on the third floor of the premises and further wrongly represented to Kotch that the ladder was safe and "complied with Fire Codes for use in [Mrs. Crosby's] premises." *Id.* at ¶ 17. Mrs. Crosby was not consulted concerning the use of the ladder. *See id.*

Based upon these facts, the plaintiffs make five claims against the defendants. First, the plaintiffs bring a wrongful death action alleging that the defendants caused the death of Richard Keith Crosby by negligently failing to fulfill their duties to the plaintiffs to provide "decent, safe, and sanitary housing in accordance with the Housing Authorities Law of the Commonwealth of Pennsylvania and the housing quality standards as set forth in the Code of Federal Regulations of the United States Department of Housing and Urban Development, .." . *See id.* at ¶ 22. In Count II, Mrs. Crosby, as administratrix of the Estate of Richard Keith Crosby, brings a survival action pursuant to 42 Pa.C.S.A. § 8302. *See id.* at 32. The third claim of the complaint is advanced by Mrs. Crosby in her own right for the emotional distress she suffered from observing the injuries and death of her son. *Id.* at ¶¶ 33–37. Next, Mrs. Crosby, as natural mother and legal guardian of minor plaintiff Cherie Nelson, sets out a claim for *negligent infliction of emotional distress* upon Cherie Nelson because she observed the injuries and death of her half brother, Richard Keith Crosby. *See id.* at ¶¶ 39–43. Finally, in the fifth claim of the complaint, which apparently is founded on § 1983, Mrs. Crosby, as administratrix of her son's estate, seeks punitive damages from each of the defendants claiming that "the negligence and acts of each of the Defendants herein named were done with reckless and callous indifference to the federally protected rights of Plaintiffs herein ...". *Id.* at ¶ 44.

On February 16, 1990, the defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6). *See* document 4 of record. Shortly thereafter, a brief in support of the motion to dismiss was filed by the defendants. *See* document 7 of record. Plaintiffs responded by filing an opposing brief on March 6, 1990. *See* document 8 of record.

The time for defendants to file a reply brief has passed with no further submissions. Accordingly, the motion is now ripe for disposition by this court.

## II. *Discussion*

On a motion to dismiss for failure to state a claim upon which relief can be granted, the burden of proof lies with the moving parties. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir.1980). The court, in ruling upon a 12(b)(6) motion, must accept all well-pleaded allegations of the complaint as true and construe them in a light most

favorable to the non-moving parties. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Truhe v. Rupell*, 641 F.Supp. 57, 58 (M.D. Pa.1985) (Rambo, J.). The motion should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976).

In order to state a valid cause of action under § 1983, two essential elements must be present. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). First, the conduct of which the plaintiffs complain must have been committed by a person acting under color of state law. *See id.* Second, the conduct complained of must have deprived the plaintiffs of a right guaranteed to them by the Constitution or laws of the United States. *See id.*

█ In the present case, defendants argue that "the Complaint fails to allege a sufficient special relationship between the Defendants and the injuries sustained so as to permit a finding that the actions of the Defendants constituted a state action." Document 7 of record at p. 2. As the court understands this argument, defendants maintain that because they had no "ownership or control of the apartment building", their relationship to the plaintiffs was so remote that it cannot be said that the injuries suffered were a result of state action. The defendants do not deny that the Authority and its employees are state actors, but instead contend that no conduct on the part of these state actors caused the injuries here at issue. Thus, the question is not one of the presence or absence of state action but, instead, one of whether the conduct of the state actors in this case violated a right secured to the plaintiffs by the constitution or laws of the United States.

Plaintiffs respond by pointing out that their § 1983 claim is premised upon their averments that the Authority and its agents advised and instructed Kotch to place the "fire ladder" or "chain ladder" on the third floor of the premises even though the ladder did not meet the requirements of applicable state regulations. *See* document 8 at p. 7. Additionally, plaintiffs base their § 1983 claim upon their contentions the Authority and its agents continued to certify that the premises had passed inspection despite the presence of the ladder. *See id.* at 8. Finally, plaintiffs contend that if the Authority had provided proper instruction and training to its inspectors, then the substandard fire ladder would not have been used nor would the premises have passed inspection. *See id.* These allegations, the plaintiffs maintain, are sufficient to demonstrate state action which violated a right guaranteed to them by the constitution or laws of the United States.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty or property without due process of law." U.S. Const. Amend XIV. Plaintiffs allege that the defendants, while acting under color of state law, deprived each of the plaintiffs of "the right to life and freedom from bodily harm", document 1 of record at p. 3, by instructing Kotch to use the fire ladder, by certifying the premises after inspection in spite of the presence of the fire ladder, and by failing to properly train the persons who inspected the premises. *See id.*

The Supreme Court of the United States recently had the opportunity to make a pronouncement on the extent of the duties imposed by the due process clause of the fourteenth amendment upon a state actor to protect a citizen from harm caused by another. In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), a boy and his mother brought a § 1983 action against the Winnebago County Department of Social Services (Department) claiming that the Department had received complaints that the boy was being abused by his father, yet took no action to remove the boy from his father's custody. *See id.* 109 S.Ct. at 1001. Subsequently, as a result of a beating received from his

father, the boy suffered brain damage so severe that he will spend the rest of his life confined to an institution for the profoundly retarded. *See id.* at 1002.

More than two years before the date of the beating which resulted in the boy's permanent injuries, the Department learned from the father's second wife that the boy might be a victim of child abuse. *See id.* at 1001. Again, in January 1983, the Department was notified of the possibility that the boy was being abused when he was admitted to a hospital with bruises and abrasions. *See id.* This time, the Department formed a "Child Protection Team" to consider the boy's situation. *See id.* The Team decided to return the boy to the father's custody based upon the father's agreement to enroll the boy in a preschool program, seek counseling, and have his girlfriend move out of his residence. *See id.*

A month later the Department was informed that the boy had again been treated for suspicious injuries, but the Department's caseworker concluded that there was no basis for action. *See id.* For the next six months, a caseworker made monthly visits to the boy's home, during which she observed a number of suspicious injuries on the boy's head; she also noticed that the boy had not been enrolled in the preschool program and that the father's girlfriend was still living on the premises. *See id.* The caseworker dutifully recorded these incidents in her file, along with her continuing suspicion that someone in the household was abusing the boy, but did nothing more. *See id.*

In November, 1983, the Department was again notified that the boy had been treated for injuries believed by doctors to be caused by child abuse. *See id.* On the caseworker's next two visits to the home, she was informed that the boy was too ill to see her. *See id.* at 1002. Finally, in March 1984, the boy was beaten so severely that he fell into a life-threatening coma and suffered severe and permanent brain damage. *See id.*

The Supreme Court rejected the plaintiffs' argument that the Department, as a state actor, was categorically obligated to protect the boy from the harm he suffered. *See id.* at 1003–1004. The court found that the due process clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 1003. More specifically, the Supreme Court stated:

> But nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property, without 'due process of law', but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*Id.*

Applying the Supreme Court's holding in *DeShaney* to the instant case, this court is compelled to reject the plaintiffs' due process argument. In this case, as in *DeShaney*, the state actors' failure to protect the plaintiffs' against harm from other means "simply does not constitute a violation of the Due Process Clause." *Id.* at 1004. "The most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them." *Id.* at 1007. In our case there is not even evidence of suspicious circumstances which would warrant further protective action by defendants.

■ The instant plaintiffs, however, do not rely solely upon the due process clause for their contention that an affirmative obligation was imposed upon the Authority and the other defendants to protect them from the injuries which they have suffered. In addition to the due process clause, plaintiffs point to federal regulations which they claim define a "special relationship" between themselves and the defendants by

requiring the Authority to be responsible for "[i]nspections prior to leasing and at least annually to determine that the units are maintained in Decent, Safe and Sanitary conditions, and notification to Owners and Families of [the Authority's] determination." 24 C.F.R. § 882.116(o) (1989). Because the fire ladder did not meet applicable state and local fire codes,[2] the plaintiffs' argument continues, the Authority violated an obligation imposed upon it by the federal regulations to determine that the unit was safe.

Defendants assert that plaintiffs have failed to set forth facts sufficient to establish the existence of a special relationship, since the Authority at no time owned or controlled the premises. *See generally* document 7 of record. In addition, defendants aver that, even if a special relationship exists between the plaintiffs and themselves and a corresponding duty is imposed upon them, plaintiffs' complaint merely alleges that the defendants were negligent in performing that duty, and, therefore, is not sufficient to sustain an action under § 1983. *See id.*

In *DeShaney*, the Supreme Court also dealt with the concept of special relationships in the context of a § 1983 action. *See id.* at 1004–1007. In rejecting the plaintiffs' argument that a special relationship existed between the Department and the plaintiffs, the Court held that such special relationships exist only in certain limited circumstances in which the state has imposed limitations upon the freedom of the plaintiffs to act on their own behalf. *See id.* Examples of such circumstances cited by the Court include incarceration, institutionalization, or other similar restraints of personal liberty. *See id.* citing *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (state's duty to provide adequate care to medical prisoners) and *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (requiring state to provide involuntarily committed mental patients services to ensure their reasonable safety). As the Supreme Court stated:

> The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.... In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*DeShaney*, 109 S.Ct. at 1006 (Citation and footnote omitted).

Accordingly, the present plaintiffs' special relationship theory must fail. The defendants in the present case, like the defendants in *DeShaney*, "placed [plaintiffs] in no worse position than that in which [plaintiffs] would have been had [defendants] not acted at all." *Id.*

The instant defendants had no constitutional duty to protect the plaintiffs from the harm they suffered due to the fire. Thus, because plaintiffs cannot point to any obligation upon the defendants, imposed by either the due process clause directly or through a special relationship, to protect plaintiffs from the injuries suffered in this case, plaintiffs have failed to allege a claim under § 1983.

This result is consistent with the holding of *DeShaney* and in harmony with the decision of another district court faced with a similar claim. In *Baugh v. Milwaukee*, Civil No. 88–1230 (E.D.Wisc. March 8, 1989) (Evans, J.) available on WESTLAW at 1989 WL 69879, the plaintiffs brought suit based in part upon § 1983 claiming that the de-

---

**2.** While plaintiffs plainly allege that "the chain ladder did not comply with State and Local Fire Codes, Regulations, and Ordinances," document 8 of record at p. 9, they do not refer the court to any such codes, regulations or ordinances. For purposes of the instant motion, however, the court will accept the representation of the plaintiffs and assume that the chain ladder did not meet applicable regulations.

fendant city and its building inspectors violated their substantive due process rights under the fourteenth amendment by failing to properly inspect their apartment building for smoke alarms, which were required by law. *See id.* Subsequent to the improper inspections, a fire broke out killing one adult and nine children. *See id.* In dismissing the complaint, the court, following *DeShaney,* rejected the plaintiffs contention that there was a special relationship between them and the defendants. *See id.* Specifically, the court reasoned:

> Like the plaintiff in *DeShaney* the plaintiffs in this case are not arguing that government officials caused the tragedy that should have been prevented. The City of Milwaukee did not start the house fire any more than Winnebago County abused Joshua DeShaney. Thus, the plaintiffs have not (and probably cannot) state a federal claim for violation of their substantive due process rights under the fourteenth amendment. Their attempt to aver a 'special relationship' between the defendants and the plaintiffs—based on the inspection of the home prior to the fire—must fail under *DeShaney,* where no such relation was found to exist between the social workers and the boy they arguably knew was being abused. A 'special relationship' will be found only where the government affirmatively restrains the individual's freedom to act on his own behalf, through incarceration, for example, or institutionalization. The plaintiffs here were not so restrained.

*Id.,* 1989 WL 69879 at pp. 4–5. This court is persuaded by the sound reasoning of the *Baugh* court.

Plaintiffs, in opposing the motion to dismiss, point to *P.L.C. v. Housing Authority of the County of Warren,* 588 F.Supp. 961, (W.D.Pa.1984). In *P.L.C.,* the court denied the defendant's motion to dismiss the plaintiff's § 1983 action which was based upon the fact that plaintiff, a tenant in an apartment building owned by the defendant housing authority, was raped by a building maintenance man employed by the housing authority. *See id.* The *P.L.C.* court found a special relationship to exist between the defendant authority and the plaintiff, which required the authority to protect her from the harm she suffered. *See id.* at 964–965.

The court finds *P.L.C.* to be distinguishable from the instant case since the *P.L.C.* court's decision was largely based upon the fact that the defendant authority owned and controlled the premises. As the *P.L.C.* court stated:

> . . . we find that the authority had control of the premises where plaintiff lived at the time of her assault. It allocated the living area to this particular tenant. It provided the essential services of habitable space, protected from the wind and the weather. It provided utilities of water, electricity, heat and sewage. It provided a secure lock and door so that the tenant and her personal property could be secured therein from invasion by criminal action against herself and her property. We find as such that the authority and its officials stood in a special relationship to this particular plaintiff. The relationship differs only in degree from that of an inmate in a state institution or a patient in a state hospital whose constitutional rights have been repeatedly recognized.

*Id.* at 965. In the present case, no such ownership or control by the defendants existed. Moreover, this court is unsure of the precedential value of the decision in *P.L.C.* in light of the more recent decision in *DeShaney.*

Accordingly, based upon the Opinion of the Supreme Court in *DeShaney,* this court must reject plaintiffs' arguments and dismiss their § 1983 action. The court does not dismiss this action lightly. Indeed, the dismissal of this action, despite the tragic death of Richard Keith Crosby, illustrates all too graphically the consequences of the holding in *DeShaney.* It must be remembered, however, that the Authority and its employees did not cause the fire that led to the injuries in the instant case. The most that can be said is that they failed to properly advise the buildings' owner and inspect the property in a fashion that may have made this tragedy less likely.

Finally, the court points out that its decision today does not leave the plaintiffs without a remedy since it in no way prevents them from bringing a state tort action against these same defendants based upon the same facts.[3] The court today decides only that plaintiffs' complaint does not set forth allegations sufficient to state a claim for relief under § 1983. Accordingly, the court will dismiss the complaint.[4]

## III. *Conclusion*

For all of the above reasons, the defendants' motion to dismiss the complaint will be granted. An appropriate Order will enter.

---

3. Indeed, plaintiffs indicate in their complaint that a wrongful death action and a survival action have been filed against these defendants in the Court of Common Pleas of Luzerne County. *See* document 1 of record at ¶ 21.

4. Because plaintiffs' § 1983 claims will be dismissed, the court will also dismiss each of plaintiffs' pendent state claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *see also Lewis v. Kelchner,* 658 F.Supp. 358, 362 (M.D.Pa. 1986) (Kosik, J.); 13B C. Wright, A. Miller and E. Cooper *Federal Practice and Procedure,* § 3567.1 at p. 133 (1981).