[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11404

_____

D.C. Docket No. 6:15-cv-01789-TMP

TIMOTHY JARROD COLBURN,
DAVID EDWARD RHODES,
JOSEPH ANTHONY ELLIOTT,
DANIEL RUDOLPH CASSELS, JR.,
TODD MICHAEL HARRISON,
HOWARD DERRICK BUTLER,
LANDA L. CLARK,
GARY LYNN BLACKWELL,

Plaintiffs - Appellees,

versus

SUSAN ODOM,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(December 21, 2018)

Before TJOFLAT and JULIE CARNES, Circuit Judges, and KAPLAN,[*] District Judge.

TJOFLAT, Circuit Judge:

The Fourth Amendment requires that a person who has been arrested and detained without a warrant must "promptly be brought before a neutral magistrate for a judicial determination of probable cause," generally within forty-eight hours. *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 53, 111 S. Ct. 1661, 1668 (1991).[1] The States have discretion in how "to integrate [these] prompt probable cause determinations into their differing systems of pretrial procedures." *Id.*

In Alabama, a person who has been arrested and detained without a warrant must receive an initial appearance[2] at which a judge or magistrate (collectively, "magistrate") determines probable cause and sets bail.[3]  *See* Ala. R. Crim. P.

---

[*] Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation.

[1] *See also Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S. Ct. 854, 863 (1975).  The Fourth Amendment's prohibition of unreasonable searches and seizures is enforceable against the States through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691 (1961).

[2] A sheriff has the duty of ensuring that an arrestee is brought before a magistrate for an initial appearance under Alabama law. *See* Ala. Code 1975 § 14-6-1 ("The sheriff has the legal custody and charge of the jail in his or her county and all prisoners thereto. . . .  The sheriff may employ persons to carry out his or her duty to operate the jail and supervise the inmates . . . for whose acts he or she is civilly responsible.").

[3] Under Alabama law, a person arrested without a warrant must have a hearing before a magistrate within forty-eight hours of his arrest. Ala. R. Crim. P. 4.3(a)(1)(iii).  This is referred to as the initial appearance.  When the arrestee makes his initial appearance, the magistrate must "determine whether probable cause exists to believe that the defendant committed the charged offense, by examining any necessary witnesses." *Id.*  If probable cause is found, the magistrate must address the arrestee's right to bail. *Id.* 4.3(a)(1)(iii), 4.4(a)(4).

4.3(a)(1)(iii), 4.4(a), 7.2(a); Nicholas L. Chiarkas, Jr., *Alabama Criminal Trial Practice* § 2:5 (2d ed. Supp. 2017).  This appearance typically occurs within forty-eight hours of the arrest.  Ala. R. Crim. P. 4.3(a)(1)(iii).  If it does not, and a probable cause determination has not been made,[4] the arrestee must be released on the minimum bond amount[5] and directed to appear in court at a specific time and place.  *Id.*

In this case, Timothy Jarrod Colburn on behalf of himself and seven individuals—David Edward Rhodes, Joseph Anthony Elliott, David Rudolph

---

In Alabama, the district attorney is responsible for "prosecut[ing] all indictable offenses" in the "the circuit, county, or other territory for which he or she is elected or appointed."  Ala. Code 1975 § 12-17-184(2).  When an individual has been arrested without a warrant, this responsibility necessarily includes establishing that probable cause existed for the warrantless arrest and informing the magistrate respecting the arrestee's admission to bail.

The bail determination entails a fact-intensive inquiry.  If the defendant presents a risk of flight or a danger to the public, the magistrate must consider fourteen factors that relate to the charged offense as well as the defendant's characteristics and criminal history.  *Id.* 7.2(a).  After considering these factors, the magistrate must impose the "least onerous condition or conditions . . . that will reasonably assure the defendant's appearance or that will eliminate or minimize the risk of harm to others or to the public at large."  *Id.*  Given the breadth of these factors, which include the circumstances under which the crime was committed—e.g., "[v]iolence or lack of violence in the alleged commission of the offense" and the "nature of the offense charged"—it is highly probable that a district attorney presents the evidence relevant to these factors.  *Id.* 7.2(b).

[4] In Alabama, probable cause that an individual has committed an offense can be determined by (1) a grand jury on issuing an indictment, *see id.* 12.3(c), or (2) a magistrate upon receiving a complaint under oath that "set[s] forth the essential facts constituting an offense and alleging that the defendant committed the offense," *see id.* 2.3, or, as is relevant here, (3) by a magistrate on the initial appearance of an individual arrested without a warrant, *see id.* 4.3(a)(1)(iii).

[5] The Alabama Rules of Criminal Procedure set out a bail schedule with minimum bond amounts for categories of crimes.  *Id.* 7.2(b).  For instance, the minimum bond for felony drug manufacturing and trafficking is $5,000.  *Id.*

Cassels, Todd Michael Harrison, Howard Derrick Butler, Landa L. Clark, and Gary Lynn Blackwell ("Plaintiffs")—allege that a Walker County Sheriff's deputy arrested them without a warrant for *undisclosed* crimes, that they were detained in the county jail, and that they were denied a judicial determination on whether probable cause supported their arrests in violation of the Fourth Amendment.

In *Colburn v. Huddleston* ("*Colburn I*"),[6] a previous damages action brought under 42 U.S.C. § 1983, five of these individuals—Colburn, Rhodes, Elliott, Cassels, and Harrison—claimed that Deputy Sheriff Blair Huddleston, who arrested them, and Walker County Sheriff John Mark Tirey were responsible for the alleged Fourth Amendment violations they suffered.  No. 6:14-cv-01942-LSC, 2015 WL 1494554 (N.D. Ala. Mar. 30, 2015).  The District Court dismissed their claims, and we affirmed.  *See Colburn v. Huddleston*, 670 F. App'x 693 (11th Cir. 2016) (per curiam).

The instant case, *Colburn v. Odom* ("*Colburn II*"), was brought while the appeal of *Colburn I* was pending in this Court.  In *Colburn II,* the *Colburn I* plaintiffs seek damages under § 1983 against three magistrates operating under the

---

[6] We take judicial notice of all the filings and their contents from *Colburn v. Huddleston*, No. 6:14-cv-01942-LSC, 2015 WL 1494554 (N.D. Ala. Mar. 30, 2015), and *Colburn v. Huddleston*, 670 F. App'x 693 (11th Cir. 2016) (per curiam).  *See United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts.").  We do not consider the facts alleged in the pleadings, memoranda, and briefs filed in these proceedings as having been established in the *Colburn II* proceedings before the Magistrate Judge.  *See Grayson v. Warden, Comm'r, Ala. Dep't of Corr.*, 869 F.3d 1204, 1224–26 (11th Cir. 2017).

aegis of the Clerk of the Walker County Circuit Court, claiming that they are responsible for the Fourth Amendment violations alleged in *Colburn I.* These five *Colburn I* plaintiffs are joined by three other individuals who assert the same constitutional violations. Specifically, Plaintiffs allege that the magistrates failed to determine whether probable cause existed for their warrantless arrests for *undisclosed* crimes and that the Circuit Clerk, as the magistrates' supervisor, failed to ensure that the determination was made.

A United States Magistrate Judge tried this case by consent.[7] Acting on the allegations of Plaintiffs' complaint and the affirmative defense of judicial immunity asserted in the magistrates and Circuit Clerk's motion to dismiss, the Magistrate Judge concluded that the magistrates were entitled to judicial immunity but that the Circuit Clerk was not. The Circuit Clerk appeals the ruling.[8]

We are unable to meaningfully review the Circuit Clerk's appeal because, as to each Plaintiff, we cannot identify from the allegations of the complaint, answer, or motion to dismiss, which of the magistrates purportedly denied the Plaintiffs' Fourth Amendment rights.[9] We therefore vacate the District Court's judgment and

---

[7] 28 U.S.C. § 636(c).

[8] We have jurisdiction to entertain this appeal under the collateral order doctrine, which provides that "the denial of a substantial claim of absolute immunity is an order appealable before final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 525, 105 S. Ct. 2806, 2815 (1985).

[9] The same problem existed in *Colburn I.* The allegations in the complaint did not identify which magistrate purportedly failed to determine whether probable cause supported each plaintiff's arrest.

5

remand for further proceedings pursuant to the instructions laid out in the conclusion of this opinion.

I.

*Colburn I*

On October 10, 2014, Colburn brought suit for damages under § 1983 against Deputy Huddleston and Sheriff Tirey.  Colburn's case was consolidated with those of Rhodes, Elliott, Cassels, and Harrison.[10]  In his thirty-six page complaint,[11] Colburn alleged the following:

- Deputy Huddleston arrested Colburn on October 10, 2013 without a warrant and transported him to the Walker County Jail.  *The complaint did not indicate the offense(s) for which Deputy Huddleston arrested him.*

- Deputy Huddleston failed to obtain a determination on whether probable cause existed for Colburn's arrest.  *The complaint did not indicate whether Colburn was taken before a magistrate for an initial appearance, a determination on probable cause, and admission to bail.*

- Colburn was detained for thirty-six days before a probable cause determination was made.

---

[10] Thomas Carmichael, Russell England, and Lisa Ivey represented the plaintiffs.

[11] Because the plaintiffs' complaints were substantively identical, we refer only to Colburn's for ease of discussion.

6

- Colburn was released from Walker County Jail forty days after his warrantless arrest. *The complaint did not indicate the legal basis for his release*.

- Sheriff Tirey knew that Deputy Huddleston failed to seek a probable cause determination but did not correct that failure. *The complaint merely concluded that Sheriff Tirey knew Deputy Huddleston failed to seek a probable cause determination*.[12]

The defendants retained counsel[13] and moved to dismiss Colburn's complaint on the basis of qualified immunity. Their motion was the functional equivalent of an answer in that it included material facts omitted by Colburn's complaint. The motion stated that Colburn was brought before Magistrate Carol Haggard on October 11, 2013, the day after his arrest, for an initial appearance. As

---

[12] The complaint stated that Sheriff Tirey knew that Deputy Huddleston would fail to seek a probable cause determination because of

  a. Defendant Tirey being called by the District Court Clerk or others inquiring about the status of a warrant related to a "warrantless arrest" made by Defendant Huddleston on multiple occasions;

  b. Numerous complaints being made to jail personnel by family members of persons where a "warrantless arrest" was made by Defendant Huddleston and the families were unable to get that person out of jail because there was 'no paperwork;'

  c. Co-workers and supervisors of Defendant Huddleston reporting same [sic] to Defendant Tirey; and

  d. Defendant Tirey verbally reprimanding Defendant Huddleston on numerous occasions related to the same type conduct [sic] complained of herein.

Complaint, *Huddleston*, No. 6:14-cv-01942-LSC, at 10.

[13] The defendants privately retained Fred L. Clements, Jr. to represent them.

evidence that this occurred, the defendants attached to their motion Alabama

Forms C-81, "Advice of Rights on Initial Appearance before Judge or Magistrate

(Felony)," and C-80, "Order on Initial Appearance." These forms showed the

following:

- Colburn was arrested for possession, trafficking, and manufacture of

  methamphetamine.[14]

- Colburn received an initial appearance within forty-eight hours of his

  arrest.[15]

- Magistrate Haggard read Colburn a statement from the Advice of Rights

  Form, which informed him that at the initial appearance she would

  determine probable cause and set bail. Colburn signed this statement,

  affirming that he understood.

- The Order from Colburn's initial appearance shows that Magistrate

  Haggard told him of the charges against him, informed him that he had a

  right to counsel, advised him of his right to remain silent, and notified

---

[14] *See* Ala. Code 1975 § 13A-12-231 (trafficking in amphetamine and methamphetamine); § 13A-12-212 (unlawful possession or receipt of controlled substances); § 13A-12-218 (unlawful manufacture of controlled substance in the first degree); § 13A-12-260(c) (use or possession of a controlled substance).

[15] The forms showed each of the plaintiffs in the consolidated action, except for Harrison, received an initial appearance within forty-eight hours of his arrest. Harrison did not receive his initial appearance until many days after his arrest.

him of his right to a preliminary hearing.  She then set a secured appearance bond for Colburn in the amount of $3,016,000.[16]

In his response to the motion to dismiss, Colburn admitted that he received an initial appearance before Magistrate Haggard.  He alleged, however, that Magistrate Haggard did not make a probable cause determination at the initial appearance, even though she informed him that one would be made.

The District Court, in ruling on the motion to dismiss, treated the complaint as if it had been amended to reflect the events recited in the Advice of Rights and Order Forms.  The question was thus whether Deputy Huddleston and Sheriff Tirey were responsible for Magistrate Haggard's alleged failure to resolve the probable cause issue at the initial appearance.  The District Court determined that "[Colburn] appeared promptly before a neutral magistrate, and it is not the place and responsibility of the [d]efendants, who were law enforcement officials, to question or direct the magistrate, who was acting as a court official, as to the proper performance of his or her responsibilities." *Huddleston*, 2015 WL 1494554, at *4.[17]  The District Court granted qualified immunity to Deputy

---

[16] Form C-80 for the Order on Initial Appearance does not contain a box to check to indicate that the magistrate made a probable cause determination.  The Order from Colburn's initial appearance therefore does not reveal on its face whether Magistrate Haggard found probable cause to exist for his arrest.

[17] With respect to Harrison, who did not receive an initial appearance within forty-eight hours of his arrest, the District Court ruled that Alabama imposes the duty to perform probable cause determinations on judges and magistrates, not arresting officers or sheriffs.  *Huddleston*,

9

Huddleston and Sheriff Tirey and entered judgment against Colburn, Rhodes, Elliott, Cassels, and Harrison.

Colburn and his co-plaintiffs moved to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). They repeated the argument they made in response to the motion to dismiss. They argued that Deputy Huddleston and Sheriff Tirey had the responsibility to ensure that a magistrate determined probable cause at the initial appearance. They also moved the District Court to amend the complaint in Cassels' case.[18] The proposed amended complaint, which spanned fifty-three pages, alleged the following:

- Deputy Huddleston arrested Cassels without a warrant on October 10, 2013 for possession, manufacture, and trafficking of methamphetamine and transported him to the Walker County Jail.

- Cassels appeared before Magistrate Carol Haggard within forty-eight hours of his arrest, at which time she set bail at $1,516,000 but failed to determine whether probable cause existed for his arrest.[19]

---

2015 WL 1494554, at *5–*7. In the alternative, the District Court determined that the "complaint also suffers from several other causal defects," namely that "Harrison has failed to plead any facts showing that Huddleston or Tirey even knew that Harrison was detained longer than forty-eight hours without a probable cause hearing." *Id.* at *8.

[18] The plaintiffs' counsel indicated that Cassels' proposed amended complaint was intended to be representative of the amended complaint that would be filed in each of the consolidated actions if the District Court granted the motion to alter or amend the judgment.

[19] The proposed amended complaint also named Magistrates Lela Yahn and Debra Courington as defendants purportedly responsible along with Magistrate Haggard for the

- Deputy Huddleston failed to ensure that Magistrate Haggard made a determination on whether probable cause existed for Cassels' arrest.

- Cassels was detained for thirty-six days before a probable cause determination was made.

- Cassels was released from the Walker County Jail forty-two days after his warrantless arrest when his petition for habeas corpus was granted. *The complaint did not indicate the legal basis for the granting of his habeas corpus petition*.

- Sheriff Tirey knew that Deputy Huddleston failed to ensure that Magistrate Haggard made a probable cause determination but did not correct that failure. *The complaint merely concluded that Sheriff Tirey knew Deputy Huddleston failed to ensure that Magistrate Haggard made a probable cause determination*.[20]

- Circuit Clerk Odom knew that Magistrate Haggard failed to make a probable cause determination at the initial appearance but did not correct that failure. *The proposed amended complaint merely concluded that*

---

deprivation of Cassels' Fourth Amendment rights.  But it did not allege any facts pertaining to these two magistrates.

[20] *See supra* note 12.

11

*Circuit Clerk Odom knew Magistrate Haggard failed to make a probable*

*cause determination*.[21]

The District Court denied the motion to alter or amend the judgment and the

motion for leave to amend plaintiffs' complaints.  It determined that the motion to

alter or amend the judgment offered "nothing new."  Order on Motion to Alter or

Amend Judgment, *Huddleston*, 6:14-cv-01942-LSC, at *2.  The District Court

found "interesting" that the proposed amended complaint admitted "for the first

time" that Cassels appeared before a magistrate within forty-eight hours of his

arrest.  *Id.*  The District Court determined that this admission "further

undermine[d]" the assertion that Deputy Huddleston failed to seek a probable

---

[21] The proposed amended complaint stated that Odom knew that Magistrate Haggard failed to make a probable cause determination because of

   a.  Defendant Odom and other District Court Clerks being called by District Court Judges and judicial assistants, members of the Walker County District Attorney's Office, attorneys or others inquiring about the status of a warrant related to a "warrantless arrest" made by Defendant Huddleston and other members of the Walker County Sheriff's Office on multiple occasions;

   b.  Numerous complaints being made to District Court Clerks and the Circuit Clerk's Office by family members of persons where a "warrantless arrest" was made by Defendant Huddleston or other members of the Walker County Sheriff's Office and the families were unable to get that person out of jail because their bonds were in excess of their financial capabilities and there was 'no paperwork' or warrant procured within forty-eight (48) hours of their arrest;

   c.  Co-workers of Defendant Haggard reporting same to Defendant Odom; and

   d.  Defendant Odom verbally addressing the issue on numerous occasions related to the same type conduct [sic] complained of herein.

Proposed Amended Complaint, *Huddleston*, No. 6:14-cv-01942-LSC, at 16–17.

12

cause determination within forty-eight hours of the arrests. *Id.* at \*2–\*3. It therefore denied the motions. *Id.* at \*3.

On June 29, 2015, Colburn appealed the District Court's decisions granting the motion to dismiss and denying the motions to alter or amend the judgment and for leave to amend the complaint. *See Huddleston*, 670 F. App'x 693.

*Colburn II*

On October 13, 2015, with an appeal pending in *Colburn I*, Colburn and seven individuals—Rhodes, Elliott, Cassels, Harrison, Butler, Clark, and Blackwell—filed an action under § 1983 seeking damages from three Walker County Magistrates—Haggard, Lela Yahn, and Debra Courington—and Circuit Clerk Odom. The thirty-four page complaint alleged as follows:[22]

- Deputy Huddleston arrested Plaintiffs without warrants and transported them to the Walker County Jail.[23] *The complaint does not indicate the offense(s) for which Deputy Huddleston arrested them.*

- Deputy Huddleston did not "approach a judge or magistrate for a probable cause determination" on Plaintiffs' arrests.

---

[22] The complaint was signed by Thomas Carmichael, Russell England, and Lisa Ivey as counsel for Plaintiffs, the same lawyers who represented Colburn and his co-plaintiffs in the first litigation.

[23] Colburn, Rhodes, Elliott, and Cassels were arrested on October 10, 2013. Harrison was arrested on October 11, 2013. Butler was arrested on April 26, 2014. Clark and Blackwell were arrested on June 12, 2014.

- Magistrates Haggard, Yahn, and Courington learned of Plaintiffs' warrantless arrests but did not determine whether probable cause existed for them.  *The complaint alleges that these magistrates*

  > knew or should have known [of Plaintiffs' arrests] at the time [they were] brought into the jail . . . because part of the[ir] duties, including traveling to the jail almost daily and making a determination of who were the new arrestees, what were their charges, and whether probable cause existed to believe the defendant committed the charge was to conduct an Initial Appearance Hearing in accordance with Rule 4.4.

  *The complaint infers that these magistrates failed to afford Plaintiffs an initial appearance and therefore did not determine whether probable cause existed for Plaintiffs' arrests.*

- Plaintiffs were unlawfully detained in the Walker County Jail for longer than forty-eight hours after their arrests.[24]

- Plaintiffs were released from the Walker County Jail after spending more than forty-eight hours there without a probable cause determination.[25] *The complaint does not indicate the legal basis for their release.*

---

[24] Colburn, Rhodes, Elliott, and Cassels were allegedly detained for thirty-six days without receiving a probable cause determination on their warrantless arrests.  Harrison was allegedly detained eighty-four days without receiving a probable cause determination.  Butler was allegedly detained thirty-four days, and Clark and Blackwell were allegedly detained for fifteen days without receiving a probable cause determination on their warrantless arrests.

[25] Colburn was allegedly released forty days after his arrest.  Rhodes, Elliott, and Cassels were allegedly released forty-two days after their arrests.  Harrison was alleged to have been released forty-four days after his arrest (even though the complaint alleged that he did not

14

- Circuit Clerk Odom learned that the magistrates did not determine whether probable cause existed for Plaintiffs' arrests.[26] *The complaint states that the magistrates failed to determine probable cause, but it does not indicate when Circuit Clerk Odom learned of the failures. Nor does the complaint cite Circuit Clerk Odom's responsibility under Alabama law to review the magistrates' conduct at an initial appearance to ensure that they determine whether probable cause existed for an arrest without a warrant.*

The Alabama Attorney General answered the complaint on behalf of the magistrates and Circuit Clerk Odom on December 1, 2015. The answer was essentially limited to a denial that the magistrates failed to discharge their

---

receive a probable cause determination for eighty-four days). Butler was allegedly released after thirty-one days in jail. Clark was alleged to have been released twenty-one days after his arrest. And Blackwell was allegedly released after fifty-six days.

[26] The complaint stated that Odom "had actual notice" that the magistrates failed to make probable cause determinations because of

a. The [Walker County Clerk's Office] on multiple occasions calling Huddleston and other members of the Walker County Sheriff Department and asking said Deputy Sheriffs to participate in a probable cause determination related to a 'warrantless arrest' made by Huddleston and other Deputy Sheriffs;

b. Numerous complaints being made to Defendant Odom and other [Walker County Clerk's Office] personnel by family members of persons where a "warrantless arrest" was made by various Deputy Sheriffs and the families were unable to get that person out of jail because there was 'no paperwork;'

c. Walker County Courthouse Circuity [sic] and District Judges and their staff members reporting same to Defendant Odom; and

d. Defendant Odom verbally addressing Huddleston and other Deputy Sheriffs on numerous occasions related to the same type conduct [sic] complained of herein.

15

responsibility to determine probable cause and that Circuit Clerk Odom was obligated to ensure that such determinations were made. They also raised boilerplate defenses, two of which are relevant: (1) the complaint failed to state a claim for relief and (2) the defendants were entitled to judicial immunity.

## *Colburn I*

On December 22, 2015, with *Colburn II* pending, Colburn and his co-plaintiffs filed a brief in this Court in *Colburn I*. Under Alabama law, they argued, an arresting officer must seek a probable cause determination within forty-eight hours of making a warrantless arrest. *See* Brief for Appellant at 14–19, *Huddleston*, 670 F. App'x 693. They claimed that Deputy Huddleston failed to do so when he arrested them and that this failure made him liable for the alleged unlawful detention. Sheriff Tirey, they contended, learned of Deputy Huddleston's failure but did not correct it.

The defendants responded in a brief on February 8, 2016. They brought the matter of initial appearances to the forefront of the case: "Colburn, Cassels, Elliott, and Rhodes were taken before a Walker County magistrate judge where they received their initial appearances and bond hearings." Brief of Appellees at 2, *Huddleston*, 670 F. App'x 693. While the Advice of Rights read to Colburn at the initial appearance informed him that the magistrate *would* make a probable cause determination during the hearing, the defendants acknowledged that the Order did

16

not contain a box for the magistrate to check indicating that a probable cause determination had been made. *Id.* at 3. The defendants therefore framed the question as whether Deputy Huddleston and Sheriff Tirey had the responsibility to ensure that the magistrate actually made a probable cause determination at the initial appearance. *Id.* at 22–23. They asked this Court to affirm the dismissal of the complaint because neither Deputy Huddleston nor Sheriff Tirey had this responsibility.

Colburn, in his reply brief, admitted that he and three other plaintiffs appeared before a magistrate within forty-eight hours of their arrests.[27] He stated the issue as whether "the magistrate simply *skipped* the probable cause determination and proceeded straight to the separate initial appearance." Reply Brief of Appellants at 3–4 n.2, *Huddleston*, 670 F. App'x 693 (emphasis in original). He contended, however, that Deputy Huddleston should have ensured that the magistrate made a probable cause determination regarding his arrest by "promptly seek[ing] a warrant."[28] *Id.* at 4.

A panel of this Court summarily affirmed the District Court's disposition of *Colburn I* on November 17, 2016. *See Huddleston*, 670 F. App'x 693.

---

[27] Colburn did not admit that Harrison appeared before a magistrate within forty-eight hours of his arrest since Harrison's forms showed otherwise.

[28] By this argument, the plaintiffs mean that Deputy Huddleston should have filed a complaint. *See* Ala. R. Crim. P. 2.3, 2.4.

*Colburn II*

On April 25, 2016, the parties consented to the disposition of the case by a United States Magistrate Judge.  Months later, on July 15, 2016, the magistrates and Circuit Clerk Odom moved to dismiss the complaint on the ground of judicial immunity.  They contended Plaintiffs' claims were based on a judicial function—namely, the determination of whether probable cause existed for their warrantless arrests.  The doctrine of judicial immunity therefore barred the claims.

On February 24, 2017, the Magistrate Judge ruled on the defense of judicial immunity.  At the time, the Magistrate Judge was unaware of the District Court's decision in *Colburn I*—which exonerated Deputy Huddleston and Sheriff Tirey of liability for the alleged failure of the magistrates to address the probable cause issue at the initial appearances in *Colburn I*—and our decision which affirmed the District Court's *Colburn I* ruling.  The Magistrate Judge was unaware of these decisions because neither Plaintiffs' counsel nor the Alabama Attorney General informed him of the existence of the *Colburn I* litigation.

In ruling on the judicial immunity defense, the Magistrate Judge faced a complaint and motion to dismiss that were entirely silent on whether Plaintiffs received an initial appearance following their attests.  The complaint alleged only that Plaintiffs were in custody following arrests for *undisclosed* criminal offenses

18

and that the magistrates failed to determine whether the arrests had been made on probable cause. Not only were the complaint and motion to dismiss silent regarding the crimes for which Plaintiffs had been arrested, the pleadings did not disclose which magistrate failed to make a probable cause determination as to which Plaintiff's arrest.

The Magistrate Judge looked past these pleading deficiencies in deciding the case on the judicial immunity defense. All that mattered to him was that the complaint charged the magistrates with failing to perform a judicial function, a function for which they were immune from suit as a matter of law. The Magistrate Judge therefore dismissed Plaintiffs' claims against the magistrates. He denied Circuit Clerk Odom the benefit of the defense, though, on the theory that her role as the supervisor of the Circuit Clerk's Office's personnel, including the magistrates, did not involve the judicial review of the magistrates' probable cause rulings.[29] Circuit Clerk Odom appeals the Magistrate Judge's denial of judicial immunity.

---

[29] An individual standing in Plaintiffs' shoes, who has been arrested without a warrant and at his initial appearance is denied bail, can challenge the detention in a petition for a writ of habeas corpus on the ground that the detention is the product of an arrest without probable cause. *See Ex parte Patel*, 879 So. 2d 532, 533–34 (Ala. 2003); *Murphy v. State*, 807 So. 2d 603, 604 n.1 (Ala. Crim. App. 2001) ("Under the laws and practice in Alabama, habeas corpus is the proper remedy to challenge either the denial or excessiveness of bail." (quoting *Clay v. State*, 561 So. 2d 116, 1118 (Ala. Crim. App. 1990))).

In Circuit Clerk Odom's opening brief, the Alabama Attorney General disclosed for the first time the existence of *Colburn I* and our affirmance of the District Court's decision. The Attorney General indirectly asks that we take judicial notice of the *Colburn I* litigation, including the briefs the parties filed in the *Colburn I* appeal, which reveal that the *Colburn I* Plaintiffs received initial appearances. What the Attorney General could not represent is that a magistrate determined that probable cause supported their arrests. Nor could he represent that the *Colburn II* Plaintiffs, who were not parties in *Colburn I*, received an initial appearance.

Plaintiffs' answer brief does not respond to the Attorney General's references to *Colburn I*. Instead, Plaintiffs stand on the naked allegations of their complaint, in particular on the allegation that the magistrates never determined whether probable cause existed on their warrantless arrests for the undisclosed offenses. Plaintiffs ask us to affirm the Magistrate Judge's determination that Odom is not entitled to judicial immunity. That is, she is liable under the Fourth Amendment for the magistrates' alleged failure to decide whether probable cause existed for Plaintiffs' warrantless arrests and their consequent unlawful detention.

## II.

The *sine qua non* of Plaintiffs' claims in *Colburn I* and *Colburn II* is that the magistrates failed to determine whether Plaintiffs' arrests for undisclosed crimes

20

were based on probable cause. Plaintiffs' counsel are well aware that where a warrantless arrest occurs, Alabama law requires a magistrate to resolve the probable cause issue at the arrestee's initial appearance.[30] In drafting their complaints in *Colburn I* and *II,* though, counsel not only refused to identify the crimes for which their clients had been arrested, they refused to indicate whether their clients had been taken before a magistrate for an initial appearance. All counsel alleged was that as to each client, one of the magistrates (unidentified) at some point in time (undisclosed) failed to determine that the client's arrest was supported by probable cause.

The Magistrate Judge should have dismissed Plaintiffs' complaint on his own initiative because it failed to state a cognizable claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 1965 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true.").

---

[30] When we refer to the initial appearance, we mean the hearing at which the arrestee appears before a magistrate for the determinations required under Alabama Rules of Criminal Procedure 4.3(a)(1)(iii), 4.4, and 7.2.

21

At the outset, we stated that we were incapable of affording this appeal meaningful review.  We vacate the Magistrate Judge's decision for that reason and remand the case for further proceedings against the Circuit Clerk Odom.[31]  Upon receipt of our mandate, the magistrates shall ask Plaintiffs' counsel whether their clients wish to amend their complaint.  If they opt not to amend, the Magistrate Judge shall dismiss Plaintiffs' claims against Circuit Clerk Odom with prejudice. If Plaintiffs choose to amend, their amended complaint shall contain the following with respect to each Plaintiff:

- The date of the Plaintiff's arrest, the crimes for which the arrest was made, and the identity of the arresting officer (presumably Deputy Huddleston).

- The date and time the Plaintiff was booked into the Walker County Jail.

- The date and time of the Plaintiff's initial appearance, if the plaintiff received one.

- If an initial appearance was held, the identity of the magistrate who presided.[32]

---

[31] Plaintiffs did not cross appeal the Magistrate Judge's dismissal of Plaintiffs' claims against the magistrates.

[32] The amended complaint shall attach as exhibits the Alabama Forms C-80, "Order on Initial Appearance," and C-81, "Advice of Rights on Initial Appearance before Judge or Magistrate (Felony)," evidencing each Plaintiff's initial appearance, if there was one.

22

- The magistrate's failure to determine probable cause for the Plaintiff's arrest for the crimes indicated above.

- The magistrate's bail decision and that it was made without a probable cause determination having been made.

- The date and time of the Plaintiff's release from custody.

- The legal basis for the Plaintiff's release from custody.

In addition to these factual allegations, the amended complaint shall cite the Alabama law which charges the Clerks of the Circuit Courts with the responsibility of reviewing a  magistrate's initial appearance decisions and, in particular, the magistrate's probable cause determinations.[33]

The Magistrate Judge shall determine whether Plaintiffs' amended complaint fails to state a cognizable claim as required by *Iqbal* and *Twombly* and, if so, the Magistrate Judge shall consider whether dismissal of the complaint without leave to amend is warranted.[34]

---

[33] We assume that the same Alabama law would charge the Clerks of the Circuit Courts with reviewing a magistrate's decision to issue a warrant on a complaint charging a criminal offense.  *See* Ala. R. Crim. P. 2.4, 3.1.

[34] *See Saucier v. Katz*, 553 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001) ("A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"); *Martinez*, 444 U.S. 277, 284, 100 S. Ct. 553, 558 (1980) ("The first inquiry in any § 1983 suit is whether the plaintiff has been deprived of a right secured by the Constitution and laws of the United States." (alterations and quotations omitted)).

**SO ORDERED.**